ERB *v.* ERB, APPELLEE; THE POLICE AND FIREMEN'S DISABILITY
AND PENSION FUND OF OHIO, APPELLANT.

[Cite as *Erb v. Erb* (1996), 75 Ohio St.3d 18.]

(No. 94–1600—Submitted November 7, 1995—Decided March 4, 1996.)

*Baker & Hostetler, James A. Loeb, David L. Marburger* and *John J. McGowan,* for appellee.

*Betty D. Montgomery,* Attorney General, *Doug S. Musick* and *Daniel A. Malkoff,* Assistant Attorneys General, for appellant.

*Christopher S. Cook, Michael W. Gleespen, William C. Becker* and *Jerry K. Kasai,* Assistant Attorneys General, urging reversal for *amici curiae,* School

Employees Retirement System of Ohio, State Teachers Retirement System of Ohio, Public Employees Retirement System of Ohio, and Ohio State Highway Patrol Retirement System.

COOK, J. In this case, we must determine whether a court may order, as part of a marital property award in a divorce action, The Police and Firemen's Disability and Pension Fund of Ohio to pay pension benefits to a non-employee spouse prior to the participant's retirement. We find that the domestic relations court erred in issuing such an order because it violates the terms of the retirement plan. Accordingly, we reverse the court of appeals and remand the cause to the trial court.[1]

Pension or retirement benefits accumulated during the course of a marriage are marital assets subject to property division in a divorce action. *Holcomb v. Holcomb* (1989), 44 Ohio St.3d 128, 132, 541 N.E.2d 597, 600; *Hoyt v. Hoyt* (1990), 53 Ohio St.3d 177, 178, 559 N.E.2d 1292, 1294; R.C. 3105.171(A)(3)(a)(i). When distributing these marital assets, a trial court must apply its discretion based upon the circumstances of the case, the status of the parties, the nature, terms and conditions of the pension or retirement plan, and the reasonableness of the result. *Hoyt,* 53 Ohio St.3d at 179, 559 N.E.2d at 1295.

The method of distributing vested pension benefits depends on whether the benefits are matured or not. See, *e.g., Hoyt* at 182, 559 N.E.2d at 1297–1298. In either case, the trial court must not violate terms of the plan in fashioning the division of the benefits. *Id.* at 181, 559 N.E.2d at 1297. Accordingly, our analysis begins by determining whether Husband's PFDPF benefits are matured.

Pension benefits are mature when the plan provides for distribution and payments are currently due and payable to the employee. Maddox & Cassidy, Division of Employee Benefits upon Divorce: An Analysis of the Retirement Equity Act of 1984 and a Framework for Distribution of Benefits (Mar. 18, 1985), 58 Ohio Bar 436, 444–445. Pension benefits are not mature when payment is delayed until some future date. *Id.* at 445.

Although private employee benefit funds are subject to the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended by the Retirement Equity Act of 1984, Congress expressly exempted government retirement systems, such as the PFDPF, from ERISA's scope. See Sections 1002(32) and

---

1. Because we find that the domestic relations court's order provides for an option not yet available under the terms of the PFDPF, the order cannot qualify as a QDRO. See *Hoyt, infra,* 53 Ohio St.3d at 181, 559 N.E.2d at 1297, fn. 16, and Sections 414(p)(3)(A) and (B), Title 26, U.S.Code; see, also, Section 1056(d)(3)(D)(i), Title 29, U.S.Code. Accordingly, we do not reach the issue of whether the PFDPF is subject to a QDRO.

1003(b)(1), Title 29, U.S.Code. R.C. Chapter 742 sets forth the terms and conditions of the PFDPF. We review those statutes to determine whether Husband's benefits are matured and whether the trial court violated the terms of the plan when it ordered the PFDPF to pay Wife her separate interest in the plan prior to Husband's retirement.

Under the PFDPF, each member-employee contributes a percentage of his salary to the plan while each employer also contributes a percentage of the member's salary. See R.C. 742.33 and 742.34. The employee draws pension benefits from the employer-employee contributions, as well as the investment returns realized from those contributions. R.C. 742.38(B), 742.38(D) and 742.38(F).

R.C. 742.37 details the payment of these benefits. Specifically, R.C. 742.37(C)(1) states:

"A member of the fund who has completed twenty-five years of active service in a police or fire department and has attained forty-eight years of age may, at his election, retire from the police or fire department, and upon notifying the board in writing of such election, shall receive an annual pension payable in twelve monthly installments * * *."

The amount of benefits that are payable is equal to a percentage of the employee's annual salary, determined by an arithmetic formula based upon years of service. R.C. 742.37(C)(1). The employee has several options from which to choose the form of the benefit payments. R.C. 742.3711. However, the employee cannot elect from the payment options until he submits an application for retirement. *Id.*

Under the terms of the PFDPF, actual retirement is a condition precedent to the payment of pension benefits. While an employee is actively employed, the benefits are payable at a future date—retirement. Thus, they do not mature until that time.

In the present case, Husband has actively served more than twenty-five years in the city of Cleveland Fire Department and is more than forty-eight years of age. However, Husband continues to actively serve in the Cleveland Fire Department. Thus, under the terms of the PFDPF, Husband's pension benefits are not mature until he actually retires from the fire department.

In dividing benefits that are vested and ummatured, *Hoyt* provided trial courts with the option to reserve jurisdiction and either determine the parties' proportionate shares at the time of divorce or determine proportionality when the benefits become vested and matured. 53 Ohio St.3d at 182, 559 N.E.2d at 1297. The option chosen, however, must conform to the terms of the pension plan. See *id.* at 181, 559 N.E.2d at 1297.

Here, the trial court valued the marital portion of the pension at $241,581 and because the pension was the couple's most significant asset, awarded Wife $101,990 as her separate ownership interest. However, the trial court ordered an outright division of the pension, based, in part, upon its determination that the interest had matured and was presently payable. The trial court also instructed the PFDPF to provide those benefits directly to Wife at her election, regardless of whether Husband retired.

"As a creature of statute, the PFDPF has no authority beyond that which is expressly or impliedly conferred by statute." *Dreger v. Pub. Emp. Retirement Sys.* (1987), 34 Ohio St.3d 17, 20–21, 516 N.E.2d 214, 217. R.C. Chapter 742 does not expressly confer upon the PFDPF the authority to pay retirement benefits until the employee has actually retired. See R.C. 742.37 and 742.3711. By ordering the PFDPF to pay Wife her interest in the pension prior to Husband's retirement, the trial court violated the terms of the PFDPF.[2]

We are unpersuaded by Wife's contention that Husband's benefits are mature because all of the conditions necessary to receive immediate payment of full benefits are within Husband's control. Retirement is an express condition to the payment of full benefits. R.C. 742.37(C)(1). To require the PFDPF to pay Wife, the non-employee spouse, her share of benefits before Husband, the employee-spouse, retires would be contrary to the clear language of R.C. 742.37.

Furthermore, despite Wife's assertions, our decision neither contravenes our decision in *Hoyt, supra,* nor deprives Wife of her property interest. While we continue to recognize the difficulty in structuring an equitable division without dividing the pension, particularly where, as here, the retirement plan is the primary asset, we also recognize that "any given pension or retirement fund is not necessarily subject to direct division * * *." *Hoyt,* 53 Ohio St.3d at 180, 559 N.E.2d at 1296.

By this decision, Wife retains her separate interest in Husband's pension. While there was testimony that the value of the pension, and thus Wife's interest in the plan, would decrease over time, the trial court can take measures to protect her proportionate interest in the plan by reassessing its value at maturity or by ordering Husband to pay Wife her share directly.[3]

---

2.  The Retirement Equity Act of 1984, amending ERISA, contains a provision which allows courts to order benefit payments to begin after the participant reaches the earliest retirement date, regardless of whether the participant actually retires. See Section 1056(d)(3)(E)(i)(I), Title 29, U.S.Code. Thus, our decision does not affect the division of benefits prior to the participant's retirement in plans which are subject to ERISA.

3.  It is true, as Wife contends, that should Husband file a petition in bankruptcy, his obligation to pay Wife directly as part of a property settlement in a divorce might not qualify as an exception to discharge under Section 523(a)(5) of the Bankruptcy Code. See, *e.g., In re Wilson* (S.D.Ohio 1993),

For the foregoing reasons, we reverse the decision of the appellate court, vacate the trial court's order providing for the outright distribution of Husband's pension benefits, and remand this cause to the trial court for further proceedings consistent with this opinion.

*Judgment reversed*
*and cause remanded.*

MOYER, C.J., DOUGLAS, WRIGHT, F.E. SWEENEY and PFEIFER, JJ., concur.

RESNICK, J., concurs in judgment only.

---

158 B.R. 709, 712; Section 523(a)(5), Title 11, U.S.Code. However, Wife's separate property interest in Husband's pension would neither be a part of Husband's bankruptcy estate nor be subject to the jurisdiction of the bankruptcy courts. *Wilson,* 158 B.R. at 711. Thus, a discharge of Husband's obligation to pay Wife directly would not affect Wife's ownership interest in the pension itself. *Id.* at 712–713. Because Wife's interest would not be affected by a discharge and because Husband would remain subject to the contempt powers of the domestic relations court, Wife's interest would continue to be adequately protected.