[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] OPINION.
Civil Appeal From: Hamilton County Court of Common Pleas
Judgment Appealed From Is: Affirmed
Robert G. Kelly, for Plaintiff-Appellant.
 Aimee Keller, for Defendant-Appellee.
We have, sua sponte, removed this case from its original placement upon our calendar of accelerated appeals.
Paul A. Cain, plaintiff-appellant, appeals from the order of the Hamilton County Court of Common Pleas, Division of Domestic Relations, encompassed in a decree of divorce that, inter alia, divided marital property between him and Deborah D. Cain, defendant-appellee.
At the center of the controversy, here and below, is the valuation, and the methodology by which it was reached, of Paul's pension benefits accrued by virtue of his employment as a police officer. The fund from which those benefits will be paid is the Ohio Police and Firemen's Disability and Pension Fund ("PFDPF"), one which is governed by Chapter 742 of the Ohio Revised Code.
The twin assignments of error pose the several aspects of the factual and legal issues to be resolved. The first of the two is this:
 The trial court erred to the prejudice of appellant in relying on the assignment of a present value to the pension benefits of an employee who is still actively contributing to the PFDPF whose benefits had not reached maturity, securing the erroneous present value and failing to incorporate the correct formula for determination of the marital share of benefits.
The second assignment, which sets forth the corollary to the first, reads as follows:
 The trial court erred to the prejudice of appellant in awarding appellee one half of the gross value of certain benefits of appellant's employment that he may never receive and without regard to the tax consequences of such an award and without considering counterpart benefits of appellee's employment.
As the appellant submits correctly, our standard of review is whether, in reaching its conclusion, the trial court abused its discretion. In the final analysis, the questions are ones of law because the facts were either undisputed or stipulated, and, for our purposes here, they can be easily condensed.
Paul and Deborah Cain were married on July 7, 1973, and divorced on March 24, 1998. Paul began his service as a police officer in 1968 and was so employed when the divorce was granted to Deborah (on her counterclaim) on the ground of incompatibility. From 1968 to the date of the divorce (and, presumably, thereafter), Paul contributed to PFDPF. He had indicated no intention to retire voluntarily, although, according to the record, he suffered from hypertension, diabetes and liver dysfunction. One of the consequences of his medical problems was that he had become uninsurable.
In the course of his employment, Paul accumulated benefits for sick leave, compensatory time and holiday pay. Realization of those benefits has been deferred until Paul retires or otherwise terminates his employment.
The written stipulations entered into by Paul and Deborah, through their counsel, included these:
PENSION/PROFIT SHARING/RETIREMENT:
 The parties own a Police and Fireman's Disability and Pension Fund in Husband's name with an actuarial present marital value of the annual benefit accrued during the marriage of $458,039.72. The annual benefit accrued during the marriage is $26,559.30.
 The parties also own Social Security benefits in wife's name with an actuarial present value of $3,692.07 and a monthly benefit of $105.00.
 The parties agree that both of these benefits are marital and that they should be divided evenly between the parties. Because state pensions cannot be divided by means at QDRO under current law, a method will be determined in order to equally divide those assets and all costs involved in the division including but not limited to tax consequences and costs of securing the benefit in case of husband's untimely death. Due to the large value of the Police pension, the final divorce shall not occur until wife's interest in this asset is adequately secured. The court shall retain continuing jurisdiction over this matter to effectuate the stated intent of the parties.
 If life insurance on Mr. Cain to secure this benefit is unavailable or the cost is prohibitive, the matter will be referred to the Referee for decision.
OTHER ASSETS:
 The parties own accumulated sick, vacation, compensation time, hourly reduction and holiday time with City of Norwood in husband's name. On January 12, 1994, the date of separation, there were 1976 hours of sick time with a monetary value of $26,867.20, 575 hours of vacation time with a monetary value of $12,069.25, 256.25 hours of compensatory time with a value of $5,378.69, ________ days of holiday time with a value of _____________ and _____________ of hourly reduction with a value of _____________.
 In 1993, Husband received a check for unused sick time in the amount of $2,518.80 gross and $1,964.66 net.
 The parties are in disagreement whether all of the above assets are marital. Husband shall receive these assets and the court shall make the determination of whether and how much Husband shall be credited with in determining the equitable distribution of property.
It was stipulated orally that Paul's holiday and compensatory-time benefits totaled $9,085.35.
That part of the court's order questioned in this appeal reads as follows:
 Husband is presently a member/participant in Police and Fireman's Pension and has retirement benefits. Wife is hereby granted the right to receive a portion of the Husband's pension benefit in an amount equal to one-half of the marital portion of the Husband's accrued benefit under the plan. The marital portion shall be determined by multiplying the husband's monthly benefit based on a single-life annuity by a fraction [the number of months of the Husband's participation in the plan earned during the marriage (from July 7, 1973 to January 12, 1994) divided by the Husband's total months of participation in the plan when he takes his benefits]. When Wife begins receiving Social Security benefits, $52.50 per month shall be deducted from that figure as one half of the marital portion of that benefit.
 Payment to Wife shall commence when Husband retires, when he elects to take his benefits, or when Husband attains age 65, whichever is earlier.
 This court retains jurisdiction to enter such further orders as are necessary to enforce the award of pension benefits to the Wife including the recharacterization of benefits payable under the retirement system.
The panoply of problems here involved has been addressed by the Ohio Supreme Court and some of this state's intermediate courts of review.
In Erb v. Erb (1996), 75 Ohio St.3d 18, 20,661 N.E.2d 175, 178, the court held:
 Pension or retirement benefits accumulated during the course of a marriage are marital assets subject to property division in a divorce action. Holcomb v. Holcomb (1989), 44 Ohio St.3d 128, 132, 541 N.E.2d 597, 600; Hoyt v. Hoyt (1990), 53 Ohio St.3d 177, 178, 559 N.E.2d 1292, 1294; R.C. 3105.17.1(A)(3)(a)(I). When distributing these marital assets, a trial court must apply its discretion based upon the circumstances of the case, the status of the parties, the nature, terms and conditions of the pension or retirement plan, and the reasonableness of the result. Hoyt, 53 Ohio St.3d at 179, 559 N.E.2d at 1295.
 The method of distributing vested pension benefits depends on whether the benefits are matured or not. See, e.g., Hoyt at 182, 559 N.E.2d at 1297-1298. In either case, the trial court must not violate terms of the plan in fashioning the division of the benefits. Id. at 181, 559 N.E.2d at 1297. Accordingly, our analysis begins by determining whether Husband's PFDPF benefits are matured.
 Pension benefits are mature when the plan provides for distribution and payments are currently due and payable to the employee. * * * Pension benefits are not mature when payment is delayed until some future date. [Some citations omitted.]
In Erb, the court of appeals had affirmed a domestic relations order that, inter alia, had called for the PFDPF to pay wife her interest in her husband's pension when he had not yet retired. The Ohio Supreme Court reversed the court of appeals and vacated the order providing for the "outright distribution" of those pension benefits, fundamentally because that order violated the terms of the retirement plan itself. The penultimate paragraph of Justice Cook's opinion stated the following:
 By this decision, Wife retains her separate interest in Husband's pension. While there was testimony that the value of the pension, and thus Wife's interest in the plan, would decrease over time, the trial court can take measures to protect her proportionate interest in the plan by reassessing its value at maturity or by ordering Husband to pay Wife her share directly.
Erb, supra, at 22, 661 N.E.2d at 179.
In Smith v. Smith (1993), 91 Ohio App.3d 248, 632 N.E.2d 555, Judge Whiteside, writing for the Court of Appeals for Franklin County, addressed the question of how a court may accomplish an equitable division of benefits of a public-service pension plan. The plan in that instance was the Ohio Public Employees Retirement System ("PERS"), one governed by Chapter 145 of the Revised Code.
In Smith, a case that we see to be analogous to ours, the court held "abuse of discretion" to be the standard of review, and reversed an order that divided the parties' retirement assets. It was held in Smith at 257, 632 N.E.2d at 561:
 A review of the liquidity of the property reveals that there is no dispute that defendant's PERS account cannot be withdrawn in whole or in part as long as he remains employed by the state of Ohio. His interest cannot be withdrawn to effectuate a division. A review of the parties' assets pursuant to R.C. 3105.17.1(F)(2) reveals these parties do not have substantial other assets with which to offset the value of plaintiff's share of defendant's pension benefit.
 Neither does defendant have substantial other assets from which to pay a distributive award. When the court divides a nonliquid pension benefit, it is inequitable to order a distributive award from current income absent the existence of substantial other assets or an agreement of the parties.
In the case sub judice, the court awarded Deborah one-half of the stipulated value of Paul's pension (one-half of $458,039.72), the payment of which is to commence when Paul retires, elects to take his benefits or reaches age sixty-five. Recognizing Paul's lack of resources to pay presently and the legal bar to order PFDPF to pay before Paul's pension rights matured, the question then became how to secure Deborah's interest in those benefits in harmony with the supreme court's advice that a trial court may take such measures. Erb, supra.
The parties agreed that any acquisition of additional insurance on Paul's life was, for all practical purposes, impossible. The only insurance, then, was an existing Life of Virginia policy on Paul's life with a death benefit approximating $50,000. The evidence of the projected amount of Paul's contributions to PFDPF was slightly in excess of $50,000. Consequently, if Paul should die before he is eligible for the pension benefits themselves, Deborah would receive at best about $100,000 under the terms of the decree of divorce.
We have reviewed the record in light of the decisions of the supreme court that define the principles to be brought to bear upon the issues in this case. Given the wide latitude accorded the trial court by the supreme court to resolve those issues discretionally, we can find no basis upon which to hold that there was an abuse of that discretion. When all of the imponderables so clearly apparent in this case are taken into account, the orders of the court are not unreasonable, nor can they be said to be arbitrary or unconscionable. They are, by force of the economic and medical realities involved, to some degree speculative but that, standing alone, provides no basis for a reversal. As we see this case from the record, the court's division of the marital property is as equitable, i.e., fair and equal, as possible upon the facts.
Therefore, we hold that neither assignment is well taken, they are overruled for the reasons given, and the judgment of the trial court is affirmed.
Judgment affirmed.
Hildebrandt, P.J., and Winkler, J. concur
Raymond E. Shannon, retired, of the First Appellate District, sitting by assignment.
Please note:
The court has placed of record its own entry in this case on the date of the release of this Opinion.