OPINION
The present appeal arises from the decision of the Columbiana County Court of Common Pleas, Domestic Relations Division, wherein a Qualified Domestic Relations Order ("QDRO") was imposed against the Police and Firemen's Disability and Pension Fund held by Louis Ciavarella. For the reasons set forth below, the decision of the trial court is reversed and this matter is remanded for further proceedings consistent with this court's opinion herein.
 I. FACTS
Jane Ciavarella ("appellee" herein) and Louis Ciavarella were married on July 12, 1975. No children were born of the marriage. On April 3, 1997, appellee filed a complaint for divorce on the grounds of gross neglect of duty, extreme cruelty and incompatibility. Amended complaints were filed by appellee on February 3, 1998 and April 6, 1998 which joined as parties to the action the Police and Firemen's Disability and Pension Fund of Ohio ("appellant" herein) and the Ohio Public Employees Deferred Compensation Board. Said parties were joined to the action as Mr. Ciavarella was employed as a Youngstown Police Officer and had twenty-four years of service credit in the pension fund.
Following the filing of responsive pleadings, the trial court disposed of all appropriate discovery and pre-trial matters. As part of these proceedings, appellant filed a pre-trial statement objecting to the imposition of a QDRO in regards to the pension fund. In that appellant believed this matter to be one concerning only a question of law, it waived personal appearance by counsel at the trial. The matter proceeded to a trial on the merits on May 26, 1998 at which time appellee provided expert testimony arguing the appropriateness of a QDRO.
In its June 18, 1998 judgment entry, the trial court granted the parties a divorce on the grounds of incompatibility. As part of the division of marital property, the trial court granted appellee a one-half interest in Mr. Ciavarella's pension through the Police and Firemen's Disability and Pension Fund. The trial court noted that Mr. Ciavarella was not yet eligible for retirement and the parties, were not permitted to withdraw the pension funds. Additionally, the trial court found that there were insufficient marital assets to offset appellee's share of the value of the pension. Therefore, the court determined that the most appropriate method of dividing the pension was to issue a QDRO which would segregate the parties' respective interests in the pension. In acknowledging appellant's disapproval of a QDRO under the circumstances, the trial court indicated in its entry that it would issue a Qualified Court Order in the event the QDRO was subsequently held to be invalid on appeal. A review of the Qualified Court Order, attached to the judgment entry, reveals that it was little more than a QDRO which had been given a different label. Furthermore, in the event the QDRO was held to be invalid, the trial court stated it would order Mr. Ciavarella to purchase a term life insurance policy naming appellee as sole beneficiary in order to compensate her for her share of the pension.
In addition to ordering a segregation of appellee's portion of the pension from that portion belonging to Mr. Ciavarella, the trial court designated appellee as an "alternate payee" of the pension fund. Furthermore, the QDRO indicated that appellee would have control over her portion of the funds and distributions would be made directly to her. The payments were to be made according to appellee's life expectancy and she would be entitled to a prorata share of any future cost of living adjustments. Appellant filed a timely notice of appeal on July 15, 1998.
 II. ASSIGNMENT OF ERROR
Appellant raises a single assignment of error on appeal which reads as follows:
 "THE TRIAL COURT ABUSED ITS DISCRETION BY ORDERING THE POLICE AND FIREMEN'S DISABILITY AND PENSION FUND TO SEGREGATE MR. CIAVARELLA'S PENSION ACCOUNT BY ISSUANCE OF A QUALIFIED DOMESTIC RELATIONS ORDER, OR IN THE ALTERNATIVE, A QUALIFIED COURT ORDER."
In support of this assignment, appellant argues that the trial court was statutorily prohibited from ordering the segregation of funds via a QDRO. Pursuant to R.C. 742.47, appellant asserts that funds maintained in its pension may only be reached for the following purposes: child support payments, spousal support payments, restitution for theft in office or restitution to victims of sex crimes which were committed by a pension fund member during the course of his employment. In all other circumstances the pension funds are not subject to "attachment, garnishment, levy or seizure under any legal or equitable process, * * *." R.C. 742.47 (Emphasis added). By subjecting the pension to a QDRO for division of marital property purposes, appellant argues that the trial court directly contravened express statutory law and the terms of the plan. Appellant is also of the position that the trial court could have provided for the division of the pension by ordering Mr. Ciavarella to pay appellee directly when he began drawing from the pension fund. Said method of distribution would not violate the terms of the plan or the statutory provisions which established the fund. Furthermore, the trial court could enforce its order through its power to hold Mr. Ciavarella in contempt for noncompliance.
Appellee responds to this position by asserting that the trial court did not abuse its discretion in arriving at the decision at issue. In support of this position, appellee relies heavily upon an unreported common pleas court decision out of Montgomery County which is entitled Davis v. Davis (Mar. 3, 1998), Montgomery Case No. 95-DR-31. In Davis, the court was faced with an almost identical situation as that in the case at bar. The court determined that a pension issued through the Police and Firemen's Disability and Pension Fund could be subjected to a QDRO as such was not an attachment for R.C. 742.47 purposes. It was further held that R.C. 742.47 was established only to address creditor/debtor relationships rather than instances in which an individual held an ownership interest in his/her spouse's public pension.
 A. APPLICABLE LAW
In reviewing the equity of a division of property in domestic relations matters, an appellate court is required to follow the trial court's decision absent a showing that an abuse of discretion occurred. Martin v. Martin (1985), 18 Ohio St.3d 292,295. An abuse of discretion constitutes "more than an error of law or judgment, it implies that the court's attitude is unreasonable, arbitrary or unconscionable." Blakemore v. Blakemore
(1983), 5 Ohio St.3d 217, 219.
In addressing the division of marital property, it is undisputed that pension benefits accumulated during the marriage are assets subject to division in a divorce proceeding. Erb v.Erb (1996), 75 Ohio St.3d 18, 20 citing Holcomb v. Holcomb (1989),44 Ohio St.3d 128, 132. While such benefits are undeniably subject to division, the method of division to be utilized by the trial court is less certain. This is especially the case when dealing with a pension fund implemented by a governmental agency as such are not covered by the Employee Retirement Income Security Act of 1974 ("ERISA") and do not recognize QDRO's. Ricketts v.Ricketts (1996), 109 Ohio App.3d 746, 752; Sprankle v. Sprankle
(1993), 87 Ohio App.3d 129, 133.
The courts of Ohio have attempted to establish procedures to assist trial courts in the proper division of pension benefits. The Ohio Supreme Court has previously stated that in order to assure a fair and equitable division of pension benefits, a trial court must consider the status of the parties; the nature, terms and conditions of the pension; and the reasonableness of the result achieved. Hoyt v. Hoyt (1990), 53 Ohio St.3d 177, 179. In dividing the pension funds, the court is not permitted to violate the terms of the plan. Id. at 181. In light of these requirements, various methods of pension benefit division have been devised:
 "(1) withdrawing the entire employee's share from the fund; (2) offsetting the present value of the nonemployee spouse's equitable share with other marital property; (3) offsetting the present value of the nonemployee's equitable share with installment payments; or (4) ordering that a percentage of the future benefit be paid directly from the fund to the nonemployee spouse, if and when the pension matures." Smith v. Smith (1993), 91 Ohio App.3d 248, 253.
While all of these options are available to a trial court for consideration when dealing with a non-governmental pension fund, the peculiar nature of a governmental fund such as the one implemented by appellant drastically reduces a trial court's options for pension division. Ricketts and Sprankle, supra.
 B. ANALYSIS
In the case sub judice, the trial court relied upon Davis, supra in reaching the conclusion that a QDRO could be issued in regards to the pension benefits. Additionally, appellee almost exclusively relies upon said case on appeal for the proposition that the trial court did not abuse its discretion. However, the decision reached by the common pleas court in Davis was subsequently overruled by the Second District Court of Appeals inDavis v. Davis (Dec. 4, 1998), Montgomery App. No. 17124, unreported. In its decision the court held that the issuance of a QDRO requiring segregation of funds was in violation of R.C. Chapter 742 as it relates to the Police and Firemen's Disability and Pension Fund of Ohio. Id. at 9. In reaching this decision the court noted that the terms of the plan as established by R.C.742.37 (C) provides that sums of money may only become due to "members of the fund". Id. at 10. While the pension holder's spouse may have an interest in the pension benefits, she was not a "member" as anticipated by the statutory language. As such, to require any payment directly to the non-member as an alternate payee would violate the terms of the pension fund. Id.
Furthermore as provided under R.C. 742.47, all pension funds must inure wholly to the benefit of the pension member and are not subject to any legal or equitable process either while in the possession of the treasurer of the fund or while being transmitted to the pension member.
In following Ricketts and Sprankle, supra, the court further held that state pension fund benefits could not be directly distributed from the fund to a non-member spouse. Id. at 11. Therefore, it held that' the decision of the trial court ordering the issuance of a QDRO had to be reversed and an alternative method of distribution had to be employed.
This court agrees with the decision of the Second District Court of Appeals as it is consistent with both statutory and case law in this state. The QDRO issued by the trial court in the case at bar was clearly contrary to law. While the trial court in the case at bar attempted to restrictively construe R.C. 742.47 to apply only to creditor/debtor type situations so as to permit the issuance of a QDRO, such a reading of the statute is in error. The clear language of the statute indicates that pension benefits are not subject to attachment, garnishment or seizure pursuant to any legal or equitable process. No language is present in the statute which would indicate that the "legal or equitable processes" mentioned refer solely to those relating to a creditor/debtor relationship. It is clear that a QDRO is just that type of process which the statute looks to prevent from being emplaced. See Ricketts, supra. Furthermore, as a creature of statute, the pension fund administered by appellant is only granted that amount of authority conferred by statute. Dreger v.Public Emr. Retirement Sys. (1987), 34 Ohio St.3d 17, 20-21. The only persons to whom sums of money can become due from the pension fund at issue are those individuals who qualify as "members of the fund." R.C. 742.37 (C) and 742.01 (E). As such, appellee is not entitled to direct payments by appellant.
Additionally, in our decision in Patsey v. Patsey (Dec. 16, 1998), Columbiana App. No. 96-CO-52, unreported, this court recognized that public pension plans cannot be subjected to QDRO's. Id. at 3. In that decision, this court analyzed the trial court's options regarding the pension division in light of the inappropriateness of ordering direct payments from the fund to the spouse. We concluded that the only reasonable and equitable means of division was to order the member of the fund to pay a percentage of future benefits directly to the non-participating spouse when the pension became vested and matured. Id. at 5. This court is compelled to take a similar approach in the case at bar.
As discussed above, ordering a QDRO which would require either immediate distribution or future distribution is inappropriate under the present scenario as such would lead to a violation of the terms of the pension. Furthermore, the trial court previously held that there were insufficient marital assets to offset appellee's portion of the pension fund. Similarly, there has been no showing that Mr. Ciavarella has adequate resources so as to make installment payments against the amount owed to appellee. Therefore, as in the case in Patsey the only remaining option is to order Mr. Ciavarella to pay appellee her percentage directly when he begins to receive pension benefits. This approach has not only been accepted by this court in Patsey
but also has been recognized in Sprankle, supra; Vaughan v.Vaughan (Nov. 13, 1998), Ross App. No. 97CA2343, unreported; Asadv. Asad (June 19, 1997), Cuyahoga App. Nos. 70075, 70081, 70243, unreported; and Graham v. Graham (Sept. 7, 1993), Greene App. No. 92CA114, unreported.
While this court is aware of and appreciates the difficulties which the trial court has expressed in dividing a pension in this manner, we are nonetheless precluded from performing acts of judicial legislating. Until the legislature decides to alter the statutory framework under which the Police and Firemen's Disability and Pension Fund operates, this court is restricted as to how it may divide benefits which accumulate under the plan. While other states may be changing their laws thereby allowing the issuance of QDRO's in regards to public pensions, R.C. Chapter 742 as well as the case law addressing public pensions is clear that a QDRO is not permitted when dividing this type of pension in Ohio. Furthermore, in light of the limited number of available options which remain, this court is compelled to arrive at the decision outlined herein. While courts should strive to disentangle the parties' economic partnership when addressing divorce matters, such is not always possible as circumstances often will not permit disentangling. The decision in the present case may not result in a perfect solution to the problem. However, it is the only one available under the present state of the law.
For the foregoing reasons, the decision of the trial court as related to the division of Mr. Ciavarella's pension plan is reversed and this cause is remanded to the trial court for further proceedings consistent with this court's opinion and according to law.
Cox, P.J., concurs.
Waite, J., concurs.
APPROVED:
 _________________________________ JOSEPH J. VUKOVICH, JUDGE