OPINION
Defendant-appellant, Vicki Hutchins, appeals the decision of the Preble County Common Pleas Court dividing property in her divorce proceeding. We affirm.
Appellant married plaintiff-appellee, William Hutchins, on July 29, 1989. The couple remained married for approximately eight and one-half years. During the marriage, the couple resided in a house located at 2908 Bantas Creek Road in Eaton, Ohio. Appellee had acquired the home as the result of a divorce from his first wife, Dawn. At the time of appellee's first divorce on May 16, 1988, the trial court valued the house at $105,000. While he was married to appellant, appellee added a swimming pool to the house, using money he received as a settlement for injuries from an automobile accident.
Throughout the marriage, both appellant and appellee worked for General Motors. On December 31, 1991, near the beginning of his marriage, appellee had $24,432.53 in a General Motors Individual Savings Plan ("ISP"). As of August 31, 1997, appellee's ISP balance had increased by $18,259.14 to $42,691.67. Appellant also had an ISP at General Motors, but the account's balance had been liquidated and appellant spent the money. Appellee did not receive any of the funds from appellant's ISP account.
Appellee had also opened a Personal Savings Plan ("PSP") through General Motors in 1996. The PSP was essentially a tax deferred savings account. Near the time of the parties' divorce, appellee had approximately $7,000 in his PSP. However, he had borrowed $4,500 against the balance, leaving a balance of $2,500 in the account.
The couple also borrowed $10,000 from Twin Valley Bank in order to consolidate appellant's premarital debt and debt incurred by both appellant and appellee during the marriage. Appellant stopped paying on the loan, and approximately $5,500 remained unpaid at the time of the couple's divorce.
In addition to his job at General Motors, appellee also operated a business restoring classic cars during the marriage. Appellee and Gerrard Letourneau entered into a verbal partnership agreement in which Letourneau would contribute money to buy the cars, while appellee would contribute his labor and expertise to restore them. Several cars, including a 1941 Chevrolet, a 1947 Ford, and a 1949 Cadillac, had been titled and insured in appellee's name for convenience. After the complaint for divorce was filed but before it was granted, appellee transferred the cars' titles to Letourneau as "gifts." Appellee's business lost money and never made any profit.
Appellee filed an action for divorce from appellant on October 1, 1997. The couple separated in November 1997. During the divorce hearing, the court heard evidence from appellant, appellee, witnesses for each party, and two real estate appraisers. The court then entered its divorce decree and property distribution.
The trial court first found that the house constituted appellee's separate nonmarital property. After hearing substantial evidence, the trial court accepted the $165,000 valuation offered by appellee's appraiser. The court then went on to assess the evidence offered regarding improvements that had been made to the home. Although appellant contended she had expended substantial money and effort to improve the home, appellee contended that appellant's improvements consisted only of routine maintenance and that she had expended no substantial effort to improve the home. The court determined that the increase in value from the time of appellee's first divorce was due mainly to market forces.
The court then determined that appellant was entitled to one half of the $18,259 increase in value of appellee's ISP account. The court awarded appellant $9,129. The court also equally split the $2,500 remaining in appellee's PSP account that had been created during the marriage.
The court then assessed the evidence it had heard regarding the classic cars that had been titled in appellee's name during the marriage. After hearing Letourneau's testimony that he had contributed all of the money but had titled the cars in appellee's name for convenience in running the business, the court ruled that the cars belonged to Letourneau and were therefore nonmarital assets. The court found that appellant had not presented any evidence that appellee was shielding marital property.
The court did, however, find that the $5,500 Twin Valley Bank debt was a marital debt since it had been incurred to pay for things that both parties used during the marriage. The court determined that each party should pay one-half of the debt.
The court then considered the income of each party after the divorce to determine the need for spousal support. At the time of the divorce, appellant received $1,640 in monthly income, while appellee received $2,185 in monthly income. The court reasoned that once appellant received her share of the marital portion of assets, her income would rise while appellee's income would fall. Accordingly, the parties' income would become more equal. Support was therefore found to be unnecessary.
Raising five assignments of error, appellant argues that the trial court improperly divided the parties' marital property, erroneously found that items constituted nonmarital property, and failed to award appropriate spousal support. We address these assignments out of order.
Since four of appellant's five assignments of error involve the trial court's property distribution, we enumerate our standard of review before addressing each individually. The trial court is vested with broad discretion in establishing an equitable division of marital property. Donovan v. Donovan (1996), 110 Ohio App.3d 615,620. The court shall consider the relevant factors in R.C.3105.171(F) in making an equitable property distribution. In addition to the specific factors enumerated in R.C. 3105.171(F), the trial court may take into account any other factor it finds relevant to an equitable asset distribution. R.C. 3105.171(F)(9).
"Appellate courts should not review discrete[1] aspects of the property division out of context of the entire award."Baker v. Baker (1992), 83 Ohio App.3d 700, 701-02. Instead, a court should consider whether the trial court's disposition of marital property as a whole resulted in a property division that was an abuse of discretion. Id. A reviewing court may modify a property division only if it finds that the trial court abused its discretion in dividing the property as it did. Cherry v. Cherry
(1981), 66 Ohio St.2d 348, 355. Abuse of discretion connotes more than an error of law or judgment; it implies that the trial court's attitude is unreasonable, arbitrary, or unconscionable.Blakemore v. Blakemore (1993), 5 Ohio St.3d 217,218-219.
Assignment of Error No. 1:
 THE TRIAL COURT ABUSED ITS DISCRETION IN FAILING TO AWARD DEFENDANT A PORTION OF THE REAL ESTATE.
Appellant first contends that the trial court improperly valued appellee's house, then failed to award her one-half of the value of the property's appreciation due to her efforts during the marriage. Appellee responds that the trial court acted correctly in both valuing the property and in determining that appellant had failed to show that her efforts enhanced the property's value.
The trial court had discretion to determine the home's value based upon the evidence presented. Rigid rules to determine value cannot be established, as equity depends on the totality of the circumstances. Briganti v. Briganti (1984), 9 Ohio St.3d 220,221-22. The trial court thus has broad discretion to determine the value of marital property. Donovan, 110 Ohio App.3d at 621. Here, the trial court assessed the testimony of two appraisers.
Leland Coe, the appraiser who had been hired by appellant, testified that he did a "limited, restricted appraisal" of the house. Coe was not permitted to do an internal examination of the house, but did an external inspection of the house and property. He also relied upon appellant's photos and representations of the house in assessing its interior condition as "average plus," although he admitted that the accuracy of those representations could have been questionable. Coe had obtained auditor's records and information on similar properties nearby. Based on his inspection, appellant's representations, and comparisons to other properties, Coe assigned the house a $200,000 value.
William Daily, appellee's appraiser, had been given complete access to the property, and he inspected both the outside and the inside. He found deferred maintenance on the exterior and saw a lack of improvements on the interior, assessing the house's condition as "fair to below average." Daily also compared the house to similar properties, one of which he had recently appraised. Daily assigned the house a $165,000 market value, noting that the condition could result in a $40,000 swing in value.
From the valuation, it appears that the trial court found that the valuation provided by appellee's appraiser, rather than that provided by appellant's appraiser, was more credible. Given that appellee's appraiser had more access to the home and had recently appraised another similar home nearby, we cannot say that the trial court's reliance, and subsequent valuation of the property at $165,000, was improper.
Appellant also contests the trial court's determination that the efforts she put into the home were routine maintenance, rather than improvements that increased the home's value. Appellant is correct that she is entitled to receive one-half of the increase in value that is attributable to marital funds and her labor under R.C. 3105.171(A)(3)(a)(iii). See Baker, 83 Ohio App.3d at 704. Appellant presented evidence to the trial court that she performed substantial work, in the form of improvements, to the property. Appellant claimed that she did landscaping, and that marital funds were used to improve the basement, kitchen, and bathroom.
Much of appellant's evidence, however, was disputed by appellee's witnesses. Several witnesses testified that, but for painting and decorating, the home remained in much the same condition throughout the marriage as it had before the marriage and that appellant did not perform labor on the house. After assessing the evidence, the trial court determined that appellant's efforts amounted to routine maintenance, in lieu of actual improvements that increased the house's value. Therefore, the house's increase in value by five percent per year during the marriage was not due to appellant's efforts, but was instead due to market forces.
Given the evidence, we cannot say that the trial court ignored any pertinent factors, or that its valuation of the house is arbitrary or capricious. Neither can we say that the trial court's decision that appellant's efforts did not amount to improvements that increased the house's value, instead of routine maintenance, is arbitrary or capricious. There was no evidence in the record showing that the home's increase in value was due to appellant's labor or marital funds. The trial court correctly exercised its discretion to determine that appellant was not entitled to receive one-half of the house's increase in value. Appellant's first assignment of error is overruled.
Assignment of Error No. 2:
 THE TRIAL COURT ABUSED ITS DISCRETION IN FAILING TO AWARD DEFENDANT AN EQUITABLE PORTION OF PLAINTIFF'S VARIOUS ACCOUNTS.
Appellant contends that the trial court improperly divided appellee's ISP account, that the court improperly failed to award her part of appellee's $15,000 retirement bonus, and that the court improperly failed to award her part of appellee's 1997 federal income tax return. Appellee responds that the trial court properly divided his retirement accounts, and that the trial court implicitly determined that appellant should share in neither his retirement bonus nor his 1997 income tax return.
Appellant first contests the dates that the court used to determine the amount of money that accumulated in appellee's ISP account during the parties' marriage. Retirement benefits accumulated during the marriage are marital property subject to property division in a divorce action. R.C. 3107.171(A)(3)(a);Erb v. Erb (1996), 75 Ohio St.3d 18. The phrase "during the marriage" is statutorily presumed to run from the date of the marriage through the date of the final divorce hearing. R.C.3105.171(A)(2)(a). If, however, the trial court determines that the use of either or both of these dates would be inequitable, then "the court may select dates that it considers equitable in determining marital property." R.C. 3105.171(A)(2)(b).
The trial court determined the amount of money that had accumulated in appellee's ISP account during the marriage by calculating the difference from a statement showing the balance near the time of the marriage and a statement showing the balance near the time of the parties' separation. Appellee introduced a statement showing that the retirement account had a balance of $24,432.53 on December 31, 1991, near the time of the marriage. He introduced evidence showing that the account had a balance of $42,691.67 on August 31, 1997, near the time of the parties' separation. The increase during the marriage was therefore $18,259.14.
Appellant introduced no evidence showing the retirement account's balance at any time. Although appellant contends in her appellate brief that "[t]he account had a balance of $48,000 as of the time of the final hearing," we have examined the entire record and find that no such evidence exists.
The trial court utilized a valuation date for appellee's retirement plan near the parties' separation, instead of the final divorce hearing, because that balance constituted the only evidence that it had, and appellant had introduced no contrary evidence showing the retirement account's balance on the date of the divorce hearing. Given the evidence, it was unneccessary for the court to explain why it utilized equitable dates for the division instead of the presumed dates specified in R.C.3105.171(A)(2)(b). The trial court correctly utilized the date near the time of separation to find that $18,259.14 had accumulated in the account during the marriage.
Appellant also claims that the trial court erroneously failed to award her a portion of appellee's $15,000 retirement bonus. At trial, the only context in which this bonus is mentioned is within appellee's 1997 income. Appellant never asserted that she was entitled to a separate portion of this retirement bonus, so the trial court did not apportion a separate award. Instead, the court divided all of the marital assets, then considered appellee's pre-retirement income, which included the bonus, when determining whether to award spousal support. Therefore, even though not separately apportioned, the trial court accounted for the bonus through the marital property division and spousal support determination. Appellant has failed to show that the trial court failed to award her a portion of a marital asset.
Finally, appellant claims that the trial court failed to award her a portion of appellee's 1997 federal income tax refund. However, appellant did not introduce any evidence showing that a refund from appellee's 1997 income tax existed, or that the refund was a marital asset to be equitably divided. Instead, the only evidence in the record showed that appellee filed his 1997 tax return separately. Appellant proved neither the amount of the refund, if any, nor that she was entitled to any portion of it. Therefore, appellant's contention that the trial court did not award her a portion of appellee's 1997 tax refund fails since there was no evidence presented on this issue. Appellant's second assignment of error is overruled.
Assignment of Error No. 3:
 THE TRIAL COURT ABUSED ITS DISCRETION IN FAILING TO AWARD DEFENDANT ANY PORTION OF THE CLASSIC AUTOMOBILES.
Appellant argues that the trial court erred in finding that the classic automobiles, acquired as part of appellee's partnership with Letourneau, were nonmarital property. Since the automobiles, and particularly the 1941 Chevrolet, were acquired during the marriage and bore appellee's name on their titles, she asserts that the trial court should have determined that they constituted marital property and divided them accordingly. Appellee asserts that the automobiles did not actually belong to him but belonged to Letourneau, so the automobiles were never a marital asset.
Appellant is correct that the title to an automobile is proof of its ownership under R.C. 4505.04(B). Delong v. Delong (Mar. 15, 1995), 1995 WL 118162, at *3-4, Montgomery App. No. 94-CA-0056, unreported. However, appellee testified that he transferred title to the cars to Letourneau as a "gift" at Letourneau's request after the divorce complaint was filed but before the final hearing. When the court granted the parties' divorce and divided the property, the automobiles had already been titled in Letourneau's name.
Accordingly, Letourneau was the presumptive owner of the automobiles at the time of the final hearing. The court was not authorized to set aside the transfer, which removed the 1941 Cadillac from the marital property subject to a distributive award in a divorce decree. See id.; see, also, Kattwinkel v. Kattwinkel
(1947), 80 Ohio App. 397, 399 (divorce decree transferring title from a third person who was not a party to divorce action was unavailing against the third party's certified title ownership of an automobile).
The appropriate inquiry is whether appellee's transfer of the 1941 Cadillac's title to Letourneau after the complaint for divorce was filed constituted a fraudulent disposition of marital property so that the trial court should have compensated appellant with a greater award of other marital property. Under R.C.3105.171(E)(3):
 If a spouse has engaged in financial misconduct, including, but not limited to, the dissipation, destruction, concealment, or fraudulent disposition of assets, the court may compensate the offended spouse with a distributive award or with a greater award of marital property.
If the court found that appellee's transfer of his ownership was fraudulent, i.e., for the purpose of preventing an order transferring an interest in it to appellant, R.C. 3105.171(E)(3) authorized the court to compensate appellant from a distributive award of property belonging to appellee or from his income, or with a greater share of marital property. See DeLong, 1995 WL 118162 at *3-4.
Here, the court found neither a marital interest in the cars nor fraud. Instead, the court found that Letourneau was the actual owner of the cars, having initially expended the money to buy them. Indeed, the court's ruling is supported by substantial evidence. Both appellee and Letourneau testified that the cars were purchased with Letourneau's money so that they could restore them as part of their business. Appellee's name was placed on the titles for convenience, since he would repair, drive, and insure the cars in furtherance of the business. The men had agreed to sell the cars to recoup Letourneau's investment, but Letourneau still lost money; the business had never made a profit.
Appellant did not introduce any evidence showing she had an interest in the cars. The cars were not purchased with marital funds, but with Letourneau's separate funds. The only evidence showed that appellee transferred the titles to Letourneau after the complaint for divorce was filed so that Letourneau could attempt to recoup the money he had expended on the cars. The evidence simply does not show that appellee and Letourneau engaged in a fraudulent transfer of the cars' titles in order to deprive appellant of any interest she had in the cars.
We cannot say that the trial court erred in finding that appellee's transfer of titles to the cars was not a fraudulent disposition for the purpose of shielding marital assets. Appellant's third assignment of error is overruled. Assignment of Error No. 5:
 THE TRIAL COURT ABUSED ITS DISCRETION IN REQUIRING DEFENDANT TO PAY ONE-HALF THE TWIN VALLEY BANK DEBT.
In her fifth assignment of error, appellant contends that the trial court erred when it divided the debt owed to Twin Valley Bank that had been accrued by both parties during the marriage. Appellee counters that the trial court's equal division of this joint debt was equitable.
The trial court has considerable discretion in dividing the assets, as well as the liabilities, of the parties to a divorce action. Cherry, 66 Ohio St.2d at 355. A potentially equal division should be the starting point of the trial court's analysis. Id. It is left to the discretion of the trial court to determine what is equitable based upon the facts and circumstances of each case. Id.
Here, the trial court heard evidence from appellant that the Twin Valley debt, which was approximately $5,500 at the time of the divorce, was originally a $10,000 loan. Approximately $7,000 was used to consolidate the separate charge card debt appellant had incurred before the marriage. The remaining money had been used for joint expenditures on things both appellant and appellee used.
The trial court equally divided the debt, reasoning that the debt had been incurred during the marriage for things both parties used. Given appellant's testimony, we cannot find that the court's equal division of the Twin Valley marital debt constituted an abuse of discretion.
Taken in context, we find that the trial court did not abuse its discretion in dividing the parties' debts and liabilities. As a whole, the property distribution is equitable. Appellant's fifth assignment of error is overruled.
Assignment of Error No. 4:
 THE TRIAL COURT ABUSED ITS DISCRETION IN FAILING TO AWARD DEFENDANT SPOUSAL SUPPORT.
Appellant argues that the inequality in the parties' income warranted an award of spousal support, and that the trial court committed error by failing to order appellee to pay her support. Appellee responds that the court, after assessing both parties' incomes, found no reasonable basis to order him to pay appellant spousal support.
R.C. 3105.18(B) permits a court to award reasonable spousal support, while R.C. 3105.18(C) controls the determination of such support. R.C. 3105.18(C)(1) provides:
 In determining whether spousal support is appropriate and reasonable, and in determining the nature, amount, and terms of payment, and duration of spousal support, which is payable either in gross or in installments, the court shall consider all of the following factors:
(a) The income of the parties * * * ;
(b) The relative earning abilities of the parties;
 (c) The ages and the physical, mental, and emotional conditions of the parties;
(d) The retirement benefits of the parties;
(e) The duration of the marriage;
 (f) The extent to which it would be inappropriate for a party, because that party will be custodian of a minor child of the marriage, to seek employment outside the home;
 (g) The standard of living of the parties established during the marriage;
(h) The relative extent of education of the parties;
 (i) The relative assets and liabilities of the parties, including but not limited to any court-ordered payments by the parties;
 (j) The contribution of each party to the education, training, or earning ability of the other party, including, but not limited to, any party's contribution to the acquisition of a professional degree of the other party;
 (k) The time and expense necessary for the spouse who is seeking spousal support to acquire education, training, or job experience so that the spouse will be qualified to obtain appropriate employment, provided the education, training, or job experience, and employment is, in fact, sought;
 (l) The tax consequences, for each party, of an award of spousal support;
 (m) The lost income production capacity of either party that resulted from that party's marital responsibilities;
 (n) Any other factor that the court expressly finds to be relevant and equitable.
The trial court is given broad discretion in determining whether an award of spousal support is appropriate. Holcomb v. Holcomb
(1989), 44 Ohio St.3d 128, 130. An award of spousal support under this statute is discretionary and will be reversed on appeal only for an abuse of that discretion. Blakemore,5 Ohio St.3d at 218-219. Likewise, the trial court is given wide latitude in determining the amount of spousal support to be awarded, so long as the trial court properly considers the statutory factors of R.C. 3105.18. Bechtol v. Bechtol (1990), 49 Ohio St.3d 21, 24.
R.C. 3105.18(C)(1)(a) requires that the income of the parties is to be considered when determining the amount of spousal support. Carnahan v. Carnahan (1997), 118 Ohio App.3d 393, 401. Pension benefits are properly included in the parties' monthly income for the calculation of spousal support. See id. at 400;Lindsay v. Curtis (1996), 115 Ohio App.3d 742, 747. Disparity in the parties' incomes is an important factor to consider under the statute in determining the appropriateness and amount of spousal support. See Getter v. Getter (1993), 90 Ohio App.3d 1, 8-9.
Here, the trial court first assessed each party's income, including the retirement benefits each currently received. Appellant received $1,640 per month. Appellee received $2,185 per month. The parties' incomes demonstrated a disparity of $545. The trial court then reasoned that, after distribution of appellant's portion of appellee's retirement, appellant's income would likely be more and appellee's income would likely be less, resulting in an equalization of the parties' incomes. Accordingly, the court found an award of spousal support at that time was not appropriate.
The court also assessed the parties' future earning abilities, a factor it could consider under R.C. 3105.18(C)(1)(b). The court noted that appellee, while perhaps somewhat young to retire, had not done so in order to thwart an award of spousal support. In addition, appellee was able-bodied and could obtain future employment to supplement his income. The court therefore maintained jurisdiction over the spousal support issue in the event of a change in circumstances.
Contrary to appellant's contention, the court's order shows that it considered the appropriate statutory factors in R.C.3105.18 by assessing both parties' present incomes and their future earning abilities. The trial court even considered appellee's early retirement. The court then determined that the parties' incomes would likely become more equal once marital assets were distributed. The court also retained jurisdiction to modify its finding. Since the court considered all of the appropriate factors, we cannot find that the court's determination was an abuse of discretion. Appellant's fourth assignment of error is overruled.
POWELL, P.J., and WALSH, J., concur.
[1] Constituting a distinct thing, distinct. American Heritage Dictionary 532 (3d ed. 1996).