[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] JUDGMENT ENTRY.
This appeal, considered on the accelerated calendar under App.R. 11.1(E) and Loc.R. 12, is not controlling authority except as provided in S.Ct.R.Rep.Op. 2(G)(1).
In two related assignments of error, the plaintiff-appellant, Cynthia Schorsch, contends (1) that the trial court's equal division of her husband's deferred compensation plan, pursuant to the parties' divorce decree, is inequitable because she will not have access to, and earn no interest upon, her share until the husband retires; and (2) the trial court failed to properly calculate an equitable distribution of assets and liabilities. We find merit in both assignments and thus reverse and remand.
The parties were married for eleven years. No children were born the issue of the marriage. The husband, John, age forty-seven, was earning $43,000 per year as a Cincinnati firefighter. Cynthia was earning $36,000 per year as an executive assistant at Children's Hospital.
This appeal focuses on two assets. The first asset is $112,831.60 from the sale of the marital residence, which the parties placed in an escrow account. It is the parties' only cash asset. Of this amount, $14,500 was a non-marital asset of John's. The second asset is John's account with the Ohio Public Employees Deferred Compensation Program.
The magistrate calculated the current value of John's deferred compensation plan (reduced by his unspecified tax liability) at $68,016.87, and awarded the total value of the plan to him. As a set-off to Cynthia, the magistrate allocated to her $103,740.39 from the escrow account. John was given $9,091.21. By the magistrate's calculations, each party received an equal division of property totaling $143,089.08.
John filed objections to the magistrate's decision. The trial court sustained certain objections and recalculated the division of property. Unlike the magistrate, the trial court equally divided John's deferred compensation, and, based on its current value, awarded each party $37,814.11. However, as an IRC 457 Plan, the Ohio Public Employees Deferred Compensation Program will not segregate or disperse the account. The account remains the property of the employer and is held in trust for the benefit of John until he initiates payments. As noted, on the date of the divorce decree, John was forty-seven years old. The earliest date that he is eligible to retire is at age fifty-two.
In dividing the escrow account, the trial court subtracted John's non-marital asset of $14,500, from $115,002.85, the amount to which the escrow account had grown as of September 23, 1999. From the difference of $100,502.85, the court deducted an equalizer to Cynthia of $15,337.26 (the difference in the value of the personal property awarded to John), obtaining a balance of $85,165.59. The trial court divided this amount by two and awarded each party $42,582.79 in cash from the escrow account. Additionally, Cynthia was given the $15,337.26 equalizing amount previously deducted.
John's deferred compensation plan, pursuant to R.C. 3105.171(3)(a)(iv), is a marital asset. When dividing a deferred compensation plan, the trial court must, without violating the terms of the plan, (1) obtain a result which will preserve the asset so that each party can procure the most benefit, and (2) make an equitable determination, based upon the parties' overall financial situation, whether a direct division or other alternative would be most appropriate to preserve the retirement asset so that each party may derive the most benefit. Hoyt v. Hoyt (1990),53 Ohio St.3d 177, 181-182, 559 N.E.2d 1292, 1296-1297.
We agree that, because Cynthia is deprived of the use of her $37,814.11 share in John's deferred compensation plan, and cannot earn interest on her share for at least five years (and perhaps longer depending on when John retires), the trial court's division of the marital property may result in unfairness. On the other hand, we agree with John that his deferred compensation account fluctuates in value, and if the market indexes that determine the value of his account have declined when he retires, Cynthia has the assurance of a guaranteed disbursement of $37,814.11. Furthermore, John's liability for taxes on Cynthia's $37,814.11 share, which the trial court apparently failed to consider, could balance any inequity.
We do not agree with Cynthia that our standard of review is a question of law. Rather, "the trial court must apply its discretion based upon the circumstances of the case, the status of the parties, the nature, terms and conditions of the pension or retirement plan, and the reasonableness of the result." Erb v. Erb (1996), 75 Ohio St.3d 18, 20,661 N.E.2d 175, 178.
We hold that, on its face, without further findings, the trial court's equal division of John's deferred compensation is inequitable since Cynthia, under the rules of the plan, will not have the use of her share for at least five years, perhaps ten, during which she will not earn interest. On remand, if the trial court deems the circumstances appropriate, it can take measures to protect Cynthia's share in John's deferred compensation plan by either reassessing its expected value at maturity, ordering John to pay an amount equal to the share directly, or configuring the tax consequences to balance any inequity, if possible. See Erb, supra at 22, 661 N.E.2d at 179. Cynthia's first assignment of error is, therefore, sustained.
Cynthia's second assignment of error is also sustained. In Cynthia's view, the proper calculation would have been for the trial court to subtract the $145,000 (the value of John's non-marital asset) from the proceeds of the sale of the house, then divide that figure ($100,502.85) in half — then subtract from John's half ($50.251.43) the equalizing amount of $15,337.26 to give to her. Under this calculation, Cynthia would end up with $65,588.69 and John $34,914.16. Otherwise, Cynthia argues, to have done it as the trial court did, results in John having $42,582.79 and her having $57,920.04. The result, she argues, is that, when inserting these numbers into the total property division (including cars, boats, respective pensions and Social Security), John ends up with $152,024.06 in assets and she ends up with $136,686.80 — in other words an unequal distribution. Using her method of calculation, however, she argues that each side would end up with an identical figure of $144,355.42. We agree that, as calculated by the trial court, when all the figures are totaled, John received $15,337.26 more than Cynthia. We therefore find merit with Cynthia's recommended proposal to achieve the trial court's stated goal of making the property division equal.
The judgment of the trial court is reversed and this cause is remanded to the trial court for further proceedings.
Further, a certified copy of this Judgment Entry shall constitute the mandate, which shall be sent to the trial court under App.R. 27. Costs shall be taxed under App.R. 24.
Gorman, P.J., Hildebrandt and Winkler, JJ.