[This decision has been published in *Ohio Official Reports* at 91 Ohio St.3d 503.]

ERB, APPELLANT, *v.* ERB; OHIO POLICE & FIRE PENSION FUND, APPELLEE.

[Cite as *Erb v. Erb*, 2001-Ohio-104.]

*Domestic relations—Divorce and alimony—Ohio Police and Fire Pension Fund ordered by court to pay directly to member's former spouse that portion of member's monthly benefit that represents former spouse's property pursuant to division of marital assets—Order does not violate terms of the administration of the fund.*

(No. 00-1047—Submitted February 7, 2001—Decided May 30, 2001.)

APPEAL from the Court of Appeals for Cuyahoga County, No. 75072.

_____

SYLLABUS OF THE COURT

A domestic relations order requiring the Ohio Police & Fire Pension Fund to pay directly to a member's former spouse that portion of the member's monthly benefit that represents the former spouse's property pursuant to a division of marital assets does not violate the terms of the administration of the fund.

_____

DOUGLAS, J.

{¶ 1} In 1990, after approximately twenty years of marriage, John R. Erb and appellant, Donna V. Erb, were divorced. The original divorce decree, issued by the Court of Common Pleas of Cuyahoga County, awarded John his entire pension with appellee, the Police and Firemen's Disability & Pension Fund of Ohio ("the fund," now known as the Ohio Police & Fire Pension Fund), the majority of which had been accrued during the marriage.

{¶ 2} Upon appeal, the Eighth District Court of Appeals remanded the matter to the trial court to take evidence as to the present value of John's pension and to determine, in light of that value, whether the terms of the divorce decree

were equitable. On remand, the trial court determined that the pension made up such a significant portion of the marital assets that awarding the entire pension to John resulted in Donna receiving less than twelve percent of the marital assets. Consequently, the trial court determined that the divorce decree was unfair and modified the decree to award Donna a separate ownership interest in approximately forty-two percent of the present value of the portion of John's pension earned during the marriage.

{¶ 3} In addition, because John intended to delay his retirement for several years despite being fully vested in the fund, an action that would decrease Donna's interest in the fund, the trial court ordered "an outright division" of John and Donna's interests in the fund. Accordingly, the court granted Donna a "separate and divisible ownership interest" in the fund, thereby giving Donna access to her portion of the fund immediately without having to wait for John to retire. Additionally, the trial court made the fund a party to the lawsuit so that its order could be enforced.

{¶ 4} John and the fund appealed the trial court's ruling to the Court of Appeals for Cuyahoga County. The court of appeals' decision upholding the judgment of the trial court was subsequently appealed to this court. In *Erb v. Erb* (1996), 75 Ohio St.3d 18, 661 N.E.2d 175, we explicitly confirmed that Donna has a property interest in the fund but held that permitting Donna access to her interest prior to John's retirement violated the terms of the fund as set forth in R.C. Chapter 742. We, therefore, reversed the judgment of the court of appeals, vacated the order of the trial court, and remanded the cause to the trial court to take measures to protect Donna's interest in the fund. *Id.* at 22-23, 661 N.E.2d at 179.

{¶ 5} Upon remand, a subpoena of the fund's records revealed that John had retired in January 1996, and that as of January 1, 1998, John had received a total of $61,969.49 in monthly benefits from the fund. Despite having been awarded a

property interest in the fund, Donna had apparently not received any portion of the pension benefits disbursed to John as of that date.

{¶ 6} Prior to trial on remand from this court, John and Donna reached a written agreement wherein Donna was entitled to receive $1,000 out of each of John's future monthly payments from the fund. The agreement further provided that Donna would receive her monthly $1,000 payment directly from the fund itself. The trial court incorporated the terms of John and Donna's agreement into its entry and issued a domestic relations order to carry its judgment into effect.

{¶ 7} The fund appealed the trial court's order to the extent that the order required the fund to pay a portion of John's monthly benefits directly to Donna. The fund alleged that enforcement of such an order would result in a violation of R.C. 742.47, an antialienation provision of the fund. The court of appeals agreed and reversed the judgment of the trial court, thereby vacating the corresponding domestic relations order.

{¶ 8} This matter is now before this court upon the allowance of a discretionary appeal.

{¶ 9} The question before this court is whether the terms of the administration of the fund preclude it from complying with a domestic relations order requiring it to pay directly to a member's former spouse that portion of the member's monthly benefit that represents the former spouse's property pursuant to an R.C. 3105.171[1] division of marital assets. We answer this question in the

---

1. R.C. 3105.171(A) provides:
   "(3)(a) 'Marital property' means * * * all of the following:
   "(i) All real and personal property that currently is owned by either or both of the spouses, including, but not limited to, the retirement benefits of the spouses, and that was acquired by either or both of the spouses during the marriage;
   "(ii) All interest that either or both of the spouses currently has in any real or personal property, including, but not limited to, the retirement benefits of the spouses, and that was acquired by either or both of the spouses during the marriage;
   "* * *
   "(B) In divorce proceedings, the court shall * * * determine what constitutes marital property and what constitutes separate property. * * * [U]pon making such a determination, the

negative and, accordingly, we reverse the judgment of the court of appeals and reinstate the trial court's July 20, 1998 domestic relations order.

{¶ 10} There is no question that Donna has a property interest in the fund pursuant to a court-ordered division of marital property. *Erb*, 75 Ohio St.3d at 22, 661 N.E.2d at 179. Although the court of appeals recognized that Donna has an interest in the fund, it held that the terms of the fund, as set forth in R.C. Chapter 742, prohibit the fund from paying directly to Donna her share of John's monthly benefit.

## R.C. 742.47

{¶ 11} The specific provision that the court of appeals found dispositive in this case is R.C. 742.47. R.C. 742.47 is an antialienation provision and provides:

"Except as provided in sections 742.461 [order to enforce restitution to employer for theft], 3111.23 [order for child support], and 3113.21 [orders for child and spousal support] of the Revised Code, sums of money due or to become due to *any person* from the Ohio police and fire pension fund are not liable to attachment, garnishment, levy, or seizure under any legal or equitable process, whether such sums remain with the treasurer of the fund or any officer or agent of the board of trustees of the fund, or is in the course of transmission to the *person* entitled thereto, but shall inure wholly to the benefit of *such person*." (Emphasis added.)

{¶ 12} The court of appeals found that "the express language of R.C. 742.47 * * * clearly makes benefits under the pension fund available only to members of the [fund]." Applying this interpretation, the court held that the trial court's order violated R.C. 742.47, because it required the fund to make payments directly to Donna, who is not a "member of the fund" as defined in R.C. 742.01(E).[2]

---

court shall divide the marital and separate property equitably between the spouses, in accordance with this section. For purposes of this section, the court has jurisdiction over all property in which one or both spouses have an interest."

2. R.C. 742.01(E) provides:

{¶ 13} Donna contends that the court of appeals erred in construing the word "person" used in R.C. 742.47 to mean "member of the fund." We agree.

{¶ 14} Contrary to the court of appeals' holding, the express language in R.C. 742.47 does not make pension benefits available only to members of the fund. In fact, R.C. 742.47 expressly authorizes the payment of "sums of money due or to become due to *any person* from the [fund]," where such payment is provided for in certain enumerated statutes. (Emphasis added.) In interpreting R.C. 742.47, the court of appeals, in effect, deleted the term "person" and inserted the phrase "member of the fund." Courts have a duty to give effect to the words used in a statute and not to delete words used or to insert words not used. *Cleveland Elec. Illum. Co. v. Cleveland* (1988), 37 Ohio St.3d 50, 524 N.E.2d 441, paragraph three of the syllabus. Thus, the court's analysis of the statute violated the rules of statutory construction.

{¶ 15} Moreover, the court of appeals' conclusion that R.C. 742.47 permits the fund to pay benefits only to members of the fund is untenable because it conflicts with other provisions of R.C. Chapter 742 that explicitly require the fund to pay benefits to persons who are not members. For instance, R.C. 742.37(D), (E), and (F) require the fund to make payments directly to a member's surviving spouse, children, or parents. In fact, the fund acknowledges in its brief before this court that it is required to make payments directly to persons who are not members of the fund. In this regard, the fund seems to concede that the court of appeals' ruling resulted from the court's misinterpretation of R.C. 742.47.

{¶ 16} Notwithstanding the foregoing, the fund adheres to its assertion that R.C. 742.47 prohibits direct payments to Donna. The fund contends that the General Assembly intended R.C. 742.47 to protect the fund from domestic relations

---

" 'Member of the fund' means any person * * * who is contributing a percentage of the person's annual salary to the [fund] or who is receiving a disability benefit or pension from the fund as a result of service in a police or fire department."

orders that require direct payments to those in Donna's situation, *i.e.*, a member's former spouse who has been awarded a property interest in the fund pursuant to a division of marital property. We disagree.

{¶ 17} The purpose of R.C. 742.47 is to protect fund benefits from the *creditors* of persons to whom benefits are due. However, a member's former spouse who has been awarded a property interest in the member's pension pursuant to an R.C. 3105.171 division of marital property is not a *creditor* of the member with regard to the pension. Rather, by virtue of the court order, the member's former spouse has an outright property interest in the pension itself. For the reasons set forth above, we hold that R.C. 742.47 does not prohibit the fund from paying benefits directly to Donna.

{¶ 18} We acknowledge that in addition to the Eighth Appellate District, several other courts of appeals have interpreted R.C. 742.47 as prohibiting the fund from honoring a domestic relations order requiring direct payments to a former spouse. See, *e.g.*, *Davis v. Davis* (1998), 131 Ohio App.3d 686, 723 N.E.2d 599; *Volz v. Volz* (Aug. 20, 1999), Richland App. No. 98-CA-85, unreported, 1999 WL 770728; *Ciavarella v. Ciavarella* (Oct. 20, 1999), Columbiana App. No. 98CO53, unreported, 1999 WL 979238; *Ricketts v. Ricketts* (1996), 109 Ohio App.3d 746, 673 N.E.2d 156. However, the rationales used to support those decisions are comparable to the arguments raised by the fund in this case and, therefore, we find those decisions not to be well reasoned.

## R.C. Chapter 742

{¶ 19} The fund argues that even if the terms of the fund, as set forth in R.C. Chapter 742, *do not expressly prohibit* direct payments to Donna, the relevant statutes *do not authorize* such payments and "[a]s a creature of statute, [the fund] has no authority beyond that which is expressly or impliedly conferred by statute." *Dreger v. Pub. Emp. Retirement Sys.* (1987), 34 Ohio St.3d 17, 20-21, 516 N.E.2d 214, 217. In essence, the fund suggests that unless Donna can point to a specific

provision in R.C. Chapter 742 authorizing the fund to make payments directly to someone in her situation, it has no authority to do so. We find this argument unpersuasive because it would render R.C. 742.47 meaningless. That is, if only those expressly listed in R.C. Chapter 742 could receive direct payments from the fund, then there would be no reason for the General Assembly to enact R.C. 742.47 to prevent creditors from receiving payments directly from the fund through attachment, garnishment, levy, or seizure.

{¶ 20} Furthermore, we find implied statutory authority for the fund to pay benefits directly to those in Donna's situation. Specifically, R.C. 3105.171 directs courts to divide marital property, including pension benefits, equitably between the spouses, and R.C. Chapter 742 does not prohibit direct payments to satisfy a former spouse's property interest in the fund.

### Health Insurance Benefits

{¶ 21} The fund also claims that if it must comply with domestic relations orders to pay former spouses directly then it will be forced to treat those former spouses as "members of the fund." As members, the former spouses would be entitled to health insurance benefits, a costly requirement that the fund argues would be financially overwhelming. We find this argument not well taken because it is based on the faulty premise that the fund will be required to treat former spouses as members of the fund simply because they are required to pay the former spouses directly. As noted previously, the fund currently pays benefits to persons who are not members of the fund.

**Sub H.B. No. 535 ("H.B. 535")**

{¶ 22} Since this appeal was allowed, the 123rd General Assembly passed H.B. 535. H.B. 535 amends R.C. Chapters 742 and 3105 to specifically authorize payments to persons (such as Donna in this case) with a property interest in the fund pursuant to an R.C. 3105.171 division of marital assets. H.B. 535 defines such persons as "alternate payees." R.C. 3105.80. In addition, H.B. 535 amends R.C. 742.47 to include 3105.171 as an exception to the antialienation provision. The provisions of H.B. 535 expressly permitting the fund to make payments directly to alternate payees are not effective until January 1, 2002. However, orders issued prior to that date may, after January 1, 2002, be modified to permit direct payments to alternate payees. R.C. 3105.89(B).

{¶ 23} The fund urges this court to hold that the passage of H.B. 535 renders this case moot or, in the alternative, to find that by altering the statutory scheme to explicitly authorize the fund to pay benefits directly to those in Donna's situation starting in 2002, H.B. 535 supports the fund's position that the current scheme forbids such payments. We will address the fund's assertions separately.

{¶ 24} The specific question before us is whether, pursuant to the law as it exists today, the fund must comply with the trial court's July 20, 1998 domestic relations order. The fact that a new law will provide relief for Donna in the future does not answer the question whether Donna is now entitled to payments directly from the fund pursuant to the July 20, 1998 domestic relations order issued by the trial court.

{¶ 25} In addition, H.B. 535 provides that an alternate payee's share of monthly benefits will be subordinate to deductions made for child support and/or spousal support obligations of the member. R.C. 742.462(F) and (G). Donna argues, and we agree, that because these provisions were not anticipated when the trial court issued its order, they could result in a reduction of Donna's property

interest in the fund. Accordingly, for these reasons we do not agree that H.B. 535 renders this case moot.

{¶ 26} The fund's second argument related to H.B. 535 is that by enacting new provisions that will explicitly provide the fund with the authority to make the type of payments sought by Donna in this case, the General Assembly acknowledged that the fund is not now authorized to make such payments. However, we believe that the more reasoned conclusion is that when it enacted H.B. 535, the General Assembly was aware that numerous courts of appeals had interpreted R.C. Chapter 742 as prohibiting the fund from making payments directly to a former spouse with a property interest in the fund. Thus, H.B. 535 reflects the General Assembly's dissatisfaction with the courts' incorrect interpretation of R.C. Chapter 742 and is simply a clarification of the law as it exists today.

## Qualified Domestic Relations Order ("QDRO")

{¶ 27} The trial court's July 20, 1998 entry included the following language:

"The [domestic relations order] attached to this judgment entry is, and shall be treated by the parties as, a 'qualified' domestic relations order for purposes of Section 414(p) of the Internal Revenue Code, thereby causing [Donna] to be considered the recipient and distributee of any payments she receives directly [from] the Fund."

{¶ 28} The fund contends that the qualified domestic relations order ("QDRO") Donna seeks to have enforced against the fund is based on a mechanism created under the Employee Retirement Income Security Act of 1974 ("ERISA"), Section 1001 *et seq.*, Title 29, U.S.Code. Because an ERISA QDRO may be used only in relation to *private* pensions, the fund argues that the QDRO may not be enforced against the fund, a *government* pension. See Sections 1003(b)(1) and 1002(32), Title 29, U.S.Code.

{¶ 29} There is no support for the fund's contention that the QDRO at issue is an ERISA QDRO. The trial court's order clearly provides that it is to be treated as a QDRO for purposes of Section 414(p) of *the Internal Revenue Code*, *i.e.*, *Title 26*, U.S.Code. In tailoring its order as a QDRO, the trial court's goal was to satisfy federal income tax requirements to protect John from incurring the tax burden for that portion of the fund that is actually being paid to Donna. See Section 402(e)(1)(A), Title 26, U.S.Code. Thus, we find no merit to the fund's assertion that the trial court's order was an ERISA QDRO.

**Actuarial Soundness of July 20, 1998 Domestic Relations Order**

{¶ 30} The fund's arguments addressed above relate to the fund's contention that it is prohibited from complying with domestic relations orders in general. In addition to these arguments, the fund challenges the validity of the specific domestic relations order issued in this case on the grounds that it is actuarially unsound. In this regard, the fund argues that it made certain actuarial assumptions in determining John's monthly benefit and that the order issued by the trial court could result in the fund being required to pay out more than could have been anticipated. We find this argument to be without merit because it is based on the fund's flawed interpretation of the trial court's order.

{¶ 31} The fund calculated John's monthly benefit based on his election to receive a single life annuity. Pursuant to such an election, the monthly benefit payments are to cease upon John's death. The fund interprets the trial court's order as requiring it to pay Donna $1,000 for the remainder of her life regardless of whether John predeceases her. We agree that if the trial court's order required the fund to continue paying a portion of the monthly payments to Donna even after John's death, then the order could result in the fund paying out more than was actuarially anticipated. A careful reading of the trial court's July 20, 1998 entry and domestic relations order, however, reveals that the domestic relations order does not require that the fund continue paying Donna after John's death.

10

**{¶ 32}** Specifically, paragraph 3 of the July 20, 1998 entry provides Donna with the right to purchase insurance on John's life "intended to pay to [Donna] a benefit sufficient to offset her loss of her monthly payments for her life in the event [John] predeceases [her]." This provision clearly contemplates that Donna will not continue to receive $1,000 per month from the fund if John predeceases her.

**{¶ 33}** In addition, Section 7 of the domestic relations order provides: "The Firemen's Pension Fund will pay directly to [Donna] * * * her ownership interest in the Firemen's Pension Fund, as recognized and ordered hereby. [Donna] shall receive $1,000.00 per month for the balance of her life *from* [*John's*] *gross monthly benefit*. [John] shall receive the balance of his gross monthly benefit." (Emphasis added.) Bearing in mind that John will not receive a monthly benefit after his death, this provision can only be interpreted to mean that the payments to Donna will cease upon John's death.

**{¶ 34}** Although some would argue that the language used in the order could have been clearer, when read in conjunction with the entry, there can be no question that the order does not require the fund to continue paying Donna after John's death. Consequently, there is no set of circumstances under which the trial court's order will require the fund to pay greater benefits than it otherwise would. In practical terms, the domestic relations order merely requires the fund to issue two checks each month instead of one, one to Donna for $1,000 and one to John for the remainder of his monthly benefit, until either John or Donna dies. For the above reasons, the fund's argument that the trial court's order is actuarially unsound is not well taken.

## Conclusion

**{¶ 35}** For the foregoing reasons, we hold that a domestic relations order requiring the fund to pay directly to a member's former spouse that portion of the member's monthly benefit that represents the former spouse's property pursuant to a division of marital assets does not violate the terms of the administration of the

fund. Accordingly, we reverse the judgment of the court of appeals and reinstate the July 20, 1998 order of the trial court.

*Judgment reversed.*

RESNICK, PFEIFER and LUNDBERG STRATTON, JJ., concur.

MOYER, C.J., F.E. SWEENEY and COOK, JJ., dissent.

—————————————

**COOK, J., dissenting.**

{¶ 36} I respectfully dissent because the judgment of the majority requiring payment from the Ohio Police & Fire Pension Fund ("OPFPF") to a fund member's ex-spouse contravenes R.C. 742.47.

{¶ 37} Pension benefits accumulated during marriage are marital assets subject to division in a divorce proceeding. *Holcomb v. Holcomb* (1989), 44 Ohio St.3d 128, 132, 541 N.E.2d 597, 600. Five years ago, we expressly recognized that Ms. Erb retained a marital property interest in the pension benefits accumulated by Mr. Erb during the parties' marriage. *Erb v. Erb* (1996), 75 Ohio St.3d 18, 22, 661 N.E.2d 175, 179. But while pension benefits are subject to division upon divorce, the trial court's method of division is less certain. While the trial court must make an equitable division of all marital property, it may not divide a pension in a manner that violates the terms of the pension plan. *Id.* at 20, 661 N.E.2d at 178. Indeed, in *Erb*, we vacated a trial court's order providing for outright distribution of pension funds to Ms. Erb prior to Mr. Erb's retirement because such payment was not authorized under the terms of the OPFPF. *Id.* at 21-22, 661 N.E.2d at 178-179.

{¶ 38} Following our reversal and remand in *Erb*, the trial court tried another method of equitably dividing Mr. Erb's pension. In accordance with the parties' agreement, the court entered an order designed to operate in the same manner as a qualified domestic relations order ("QDRO"), which is commonly used in dividing benefits from private pensions. Just as it would in a QDRO, the trial court designated Ms. Erb as an alternate payee entitled to receive part of Mr. Erb's

12

pension benefits directly from the OPFPF. See *Hoyt v. Hoyt* (1990), 53 Ohio St.3d 177, 179-180, 559 N.E.2d 1292, 1295. The order appears to have been designed to accomplish two objectives: (1) allow Ms. Erb to receive $1,000 per month directly from the OPFPF, and (2) designate Ms. Erb as the distributee of the fund payments for tax purposes. See Sections 402(e)(1)(A) and 414(p), Title 26, U.S.Code. In essence, the trial court's order obligates OPFPF to pay directly to Ms. Erb a portion of the funds that it would have otherwise paid to Mr. Erb under the terms of his pension.

**{¶ 39}** The majority concludes that the trial court's method of dividing marital-property OPFPF benefits was valid. Yet the order actually violates R.C. 742.47, which provides:

"Except as provided in sections 742.461, 3111.23, and 3113.21 of the Revised Code, sums of money due or to become due to any person from the Ohio police and fire pension fund *are not liable* to attachment, garnishment, levy, or seizure *under any legal or equitable process*, whether such sums remain with the treasurer of the fund or any officer or agent of the board of trustees of the fund, or is in the course of transmission to the person entitled thereto, but shall inure wholly to the benefit of such person." (Emphasis added.)

**{¶ 40}** R.C. 742.47 forecloses the trial court from transferring OPFPF benefits directly to Ms. Erb before Mr. Erb ever receives them. The trial court's order, however, does just that. It effectively operates as an attachment or seizure of money due Mr. Erb, precluding funds from inuring wholly to his benefit. The court's method of dividing Mr. Erb's pension directly conflicts with R.C. 742.47 and is therefore invalid. See *Davis v. Davis* (1998), 131 Ohio App.3d 686, 693, 723 N.E.2d 599, 604-605.

**{¶ 41}** The majority upholds the trial court's order, however, with a dubious reading of R.C. 742.47. Emphasizing the statute's use of the phrase "any person," the majority concludes that R.C. 742.47 "expressly authorizes" payment from the

OPFPF to any person and not simply OPFPF members. But R.C. 742.47 does not *authorize* payment to *anyone*. The statute is merely an antialienation provision that prevents seizure by legal or equitable process of funds that a person is due to receive under the terms of the OPFPF. Money due from the fund is exempted from attachment, garnishment, or seizure under *any* legal process except orders under R.C. 742.461 (restitution for theft offense), 3111.23 (child support withholding), or 3113.21 (spousal support withholding). Significantly, however, the statute contains no such exemption for orders relating to a property division in a divorce action.

**{¶ 42}** The majority bolsters its faulty reading of R.C. 742.47 by noting that the statute's purpose "is to protect fund benefits from the *creditors* of persons to whom benefits are due." (Emphasis *sic.*) Because Ms. Erb is not a "creditor" of a fund member but, rather, someone with "an outright property interest in the pension itself," the majority reasons that R.C. 742.47 does not prohibit the OPFPF from paying Ms. Erb directly. But Ms. Erb's status as an owner of a marital property interest in pension funds, as opposed to being a creditor of a fund member, does not render R.C. 742.47 inapplicable. The statute's language is not limited to attachments or garnishments arising from a creditor/debtor relationship. *Ciavarella v. Ciavarella* (Oct. 20, 1999), Columbiana App. No. 98CO53, unreported, 1999 WL 979238. To the contrary, the statute applies to "attachment, garnishment, levy, or seizure *under any legal or equitable process*." (Emphasis added.) This broad language includes domestic relations orders issued under R.C. 3105.171 that purport to operate as QDROs. See *Ricketts v. Ricketts* (1996), 109 Ohio App.3d 746, 752, 673 N.E.2d 156, 160. The trial court in this case attached pension funds that OPFPF was obliged to pay to Mr. Erb under R.C. 742.37(C), thereby ordering a transfer of benefits that R.C. 742.47 directly forbids. See *Davis*, 131 Ohio App.3d at 693, 723 N.E.2d at 604.

**{¶ 43}** The majority exacerbates the misreading of R.C. 742.47 by reaching its ultimate conclusion that Ms. Erb is entitled to direct payment from the OPFPF

under the statutory scheme. "As a creature of statute, the [OPFPF] has no authority beyond that which is expressly or impliedly conferred by statute." *Dreger v. Pub. Emp. Retirement Sys.* (1987), 34 Ohio St.3d 17, 20-21, 516 N.E.2d 214, 217. The majority finds "implied statutory authority" because "R.C. 3105.171 directs courts to divide marital property, including pension benefits, equitably between the spouses, and R.C. Chapter 742 does not prohibit direct payments to satisfy a former spouse's property interest in the fund." But the majority's finding of "implied statutory authority" contradicts our admonition that the trial court cannot violate terms of the pension plan when dividing a pension. *Erb*, 75 Ohio St.3d at 20, 661 N.E.2d at 178; *Hoyt*, 53 Ohio St.3d at 181, 559 N.E.2d at 1297. Thus, the trial court's authority to equitably divide OPFPF benefits in a divorce is necessarily limited by R.C. 742.47, the antialienation provision of the pension plan. That statute, by its very terms, prohibits the direct payment Ms. Erb seeks from the fund.

{¶ 44} The majority's interpretation of R.C. Chapter 742, and R.C. 742.47 in particular, is further undermined by the General Assembly's apparent recognition of the difficulty trial courts faced when dividing OPFPF pension funds in a divorce. To help alleviate the problem, the General Assembly enacted Sub.H.B. No. 535, which was signed by the Governor on December 14, 2000. Effective January 1, 2002, H.B. 535 amends R.C. 742.47 to exempt orders issued under R.C. 3105.171 from the antialienation provision. Because of this amendment to R.C. 742.47, an order seeking to accomplish what the trial court sought to do in this case will likely be valid after H.B. 535's effective date (so long as the order meets other statutory requirements). Thus, the General Assembly appears to have intended H.B. 535 to enact a substantive change to the OPFPF and afford persons in Ms. Erb's position the opportunity to receive payment from the fund under a court-ordered division of marital property.

{¶ 45} The majority discounts the significance of H.B. 535 by concluding that the General Assembly's effort "is simply a clarification of the law as it exists

today." Because numerous courts of appeals had interpreted R.C. 742.47 to prohibit direct payment by the OPFPF to satisfy an ex-spouse's interest in a member's pension, the majority reasons that H.B. 535 "reflects the General Assembly's dissatisfaction with the courts' incorrect interpretation." The majority therefore believes that H.B. 535 enacted no substantive change to R.C. Chapter 742. But the majority's explanation is unavailing. "It is a well-settled canon of interpretation of an amendment to a statute that the Legislature will be deemed to have intended some practical change to existing legislation." *Union Trust Co. v. Hawkins* (1929), 121 Ohio St. 159, 180, 167 N.E. 389, 395; see, also, *Lynch v. Gallia Cty. Bd. of Commrs.* (1997), 79 Ohio St.3d 251, 254, 680 N.E.2d 1222, 1224. In some instances, a change might indeed be nothing more than a rewording of the statute to clarify a previously intended meaning. See *Bartlett v. Nationwide Mut. Ins. Co.* (1973), 33 Ohio St.2d 50, 54, 62 O.O.2d 406, 409, 294 N.E.2d 665, 668. But the changes enacted by H.B. 535 suggest more than a clarification of existing law.

{¶ 46} If the changes to R.C. 742.47 were merely meant as a clarification of existing law, there would be no reason for the General Assembly to set a *future* effective date of *January 1, 2002* for the amendment. It would be curious for the legislature to delay the effective date of a statutory amendment that was meant merely to clarify what the statute already meant. The intent to *change* existing law is further reflected in the preamble to H.B. 535 expressing the General Assembly's desire "to permit a public retirement program, pursuant to a court order, to make payments to a participant's former spouse for the purpose of dividing marital property." The bill's text therefore suggests that the legislature sought to permit something that was *not* permitted under the current version of the OPFPF. Finally, the enacted amendment to R.C. 742.47 adds to the statutory text an entirely new category of court orders (*i.e.*, orders issued under R.C. 3105.171) that may validly attach, seize, garnish, or levy OPFPF funds notwithstanding the antialienation

provision. Had the General Assembly intended the current version of R.C. 742.47 to exempt orders under R.C. 3105.171, it could have easily done so. Instead, the current version of the statute applies the exemption only to orders issued under R.C. 742.461, 3111.23, and 3113.21, leaving R.C. 3105.171 conspicuously absent.

**{¶ 47}** As the law *currently* stands, R.C. 742.47 forbids the method of dividing OPFPF benefits that the trial court ordered in this case. The court of appeals was therefore correct to vacate the trial court's order. The majority's decision to the contrary is incorrect. I therefore dissent.

MOYER, C.J., and F.E. SWEENEY, J., concur in the foregoing dissenting opinion.

————————————

*Baker & Hostetler*, *L.L.P.*, *John J. McGowan, Jr.* and *James A. Loeb*, for appellant.

*Betty D. Montgomery*, Attorney General; *Chester, Willcox & Saxbe*, *L.L.P.*, *Eugene B. Lewis* and *Sarah Daggett Morrison*, for appellee.

————————————