PATTERSON, Appellee,

v.

PATTERSON, Appellee;

and

Public Employees Retirement System of Ohio, Appellant.

[Cite as *Patterson v. Patterson,* 151 Ohio App.3d 574, 2003-Ohio-709.]

Court of Appeals of Ohio,
Twelfth District, Butler County.

No. CA2002–04–095.

Decided Feb. 18, 2003.

Vincent A. Sanzone, for appellee.

Melanie K. Patterson, pro se.

Jim Petro, Attorney General, and Michael R. Gladman, Assistant Attorney General, for appellant.

POWELL, Judge.

{¶ 1} Third-party defendant-appellant, Public Employees Retirement System of Ohio ("PERS"), appeals from a decision of the Butler County Common Pleas Court, Domestic Relations Division, denying its motion to set aside a Qualified Domestic Relations Order ("QDRO") that had been issued as part of the property division in the divorce of plaintiff-appellee, John D. Patterson, and defendant-appellee, Melanie K. Patterson, n.k.a. Phelps.

{¶ 2} John and Melanie were married in November 1995. John is employed with the Hamilton County Park District. Melanie is employed with the Wright State University Police. Both John and Melanie have PERS accounts. John also has an Ohio Public Employees Deferred Compensation account.

{¶ 3} In September 2000, John filed a complaint for divorce. On July 2, 2001, a magistrate issued a decision finding, among other things, that John and Melanie were each entitled to one-half of the marital portion of the other's PERS account, and that Melanie was entitled to one-half of the marital portion of John's deferred compensation account. The magistrate recommended that a QDRO be issued to effectuate the division of the PERS and deferred compensation accounts.

{¶ 4} On September 7, 2001, the trial court issued a Decree of Divorce and Final Appealable Order, adopting the magistrate's recommendations, and ordering, among other things, that a QDRO be issued to effectuate the division of the parties' PERS accounts and John's deferred compensation account.

{¶ 5} On December 26, 2001, PERS, represented by the Ohio Attorney General's Office, moved for Civ.R. 60(B) relief, requesting that it be joined as a third-party defendant in the action and that the QDRO previously issued in the case be set aside. The trial court granted PERS's motion to be joined as a third-party defendant and gave all parties the opportunity to file a written memorandum of law on the issue of whether the QDRO should be set aside.

{¶ 6} On March 26, 2002, the trial court issued a decision and entry denying PERS's Civ.R. 60(B) motion. The trial court concluded that, pursuant to *Erb v. Erb* (2001), 91 Ohio St.3d 503, 747 N.E.2d 230 ("*Erb II*"), the QDRO did not violate the PERS plan's anti-alienation provision. The trial court also rejected PERS's arguments that *Erb II* applies only to the Ohio Police and Fire Pension Fund, and that the QDRO violated the statutory terms of the PERS plan. Additionally, the trial court refused to apply the provisions of Sub.H.B. No. 535 to this case, on the grounds that those provisions "are not equivalent to the protections offered by a Qualified Domestic Relations Order."

{¶ 7} PERS appeals from the trial court's denial of its Civ.R. 60(B) motion.

{¶ 8}  PERS has failed to set forth a formal assignment of error in its appellate brief as required by App.R. 16(A).  Nevertheless, PERS is essentially arguing that the trial court abused its discretion in overruling its Civ.R. 60(B) motion to set aside the QDRO issued in this case.

{¶ 9}  Initially, we note that the trial court committed a procedural error by joining PERS as a party to the action without first setting aside the judgment in which it issued the QDRO. A trial court cannot add a party to an action after it has entered a final judgment and the time for an appeal from that judgment has passed.  *Cantley v. Island Leasing Co.* (July 21, 2000), Hamilton App. No. C–990766, 2000 WL 1005212.  Once a final judgment has been entered in an action, a party that has not been joined to the action must seek relief from that judgment under Civ.R. 60(B).  See id.

{¶ 10}  In this case, the trial court should have granted PERS's Civ.R. 60(B) motion because it met all three prongs of the standard set forth in *GTE Automatic Elec., Inc. v. ARC Indus., Inc.* (1976), 47 Ohio St.2d 146, 1 O.O.3d 86, 351 N.E.2d 113.  First, contrary to what the trial court found, PERS demonstrated that it possessed a meritorious claim or defense to present if relief was granted, to wit, it was inappropriate for the trial court to issue a QDRO to effectuate the division of the parties' PERS accounts and John's deferred compensation account.  PERS did not need to show that it would prevail on this issue if the trial court had set aside the QDRO and allowed all parties to brief the issue.  Instead, PERS needed only to show that it had a meritorious claim or defense to present if relief was granted.  See, e.g., *Colley v. Bazell* (1980), 64 Ohio St.2d 243, 247, 18 O.O.3d 442, 416 N.E.2d 605, fn. 3 (movant's burden is to allege existence of a meritorious defense, not to prevail with respect to the truth of that defense).

{¶ 11}  PERS established the second prong of the *GTE* standard by showing that it was entitled to relief under one of the grounds stated in Civ.R. 60(B)(1) through (5).  Because the evidence showed that PERS did not receive notice of the action until after the judgment imposing the QDRO on it had been entered in the case, PERS was entitled to relief on the grounds of mistake, inadvertence, surprise or excusable neglect under Civ.R. 60(B)(1).  See *Rite Rug Co., Inc. v. Wilson* (1995), 106 Ohio App.3d 59, 62, 665 N.E.2d 260 (where effective service of process has not been made on a party, the court's judgment is void and may be set aside at any time pursuant to the court's inherent authority).  Finally, PERS also met the third prong of the *GTE* standard since its Civ.R. 60(B) motion for relief from judgment based on Civ.R. 60(B)(1) was made within one year of the date the judgment was issued.

{¶ 12} Consequently, the trial court abused its discretion by not sustaining PERS's Civ.R. 60(B) motion, and setting aside, at least temporarily, the QDRO it issued in the case. Upon sustaining PERS's Civ.R. 60(B) motion, the trial court *then* should order all parties to brief the issue of whether the QDRO should be set aside.

{¶ 13} Nevertheless, PERS was not prejudiced by the trial court's procedural errors because PERS (along with John and Melanie) was given an opportunity in the lower court's proceedings to brief the QDRO issue. Thus, we now turn to the question of whether it was appropriate for the trial court to issue a QDRO to PERS in order to divide the marital portion of John and Melanie's PERS accounts and the marital portion of John's deferred compensation account. For the reasons that follow, we conclude that it was not.

{¶ 14} "A QDRO is a qualified domestic relations order 'which creates or recognizes the existence of an alternate payee's right to, or assigns to an alternate payee the right to, receive all or a portion of the benefits payable with respect to a participant under a plan * * *.' Employee Retirement Income Security Act of 1974 ('ERISA'), Section 206(d)(3)(B)(i)(I) and Section 414(p)(1)(A)(i), Title 26, U.S.Code. Under the Retirement Equity Act of 1984 ('REA'), the QDRO allows the transfer of retirement benefits to an alternate payee (generally the former spouse) without triggering the anti-assignment or alienation provision of a retirement plan." (Footnotes omitted.) *Hoyt v. Hoyt* (1990), 53 Ohio St.3d 177, 179–180, 559 N.E.2d 1292.

{¶ 15} State retirement plans are exempt from the provisions of ERISA, see *Erb v. Erb* (1996), 75 Ohio St.3d 18, 661 N.E.2d 175 (*"Erb I"*), and, in the past, have been protected from alienation by state statute. See, e.g., former R.C. 145.56 (PERS), and former R.C. 742.47 (the Ohio Police & Fire Pension Fund ["OPFPF"] ). Consequently, it had generally been held in this state that QDROs could not be used to divide a party's state retirement benefits. See, e.g., *Graham v. Graham* (Sept. 7, 1993), Greene App. No. 92–CA–114, 1993 WL 350038.

{¶ 16} Nevertheless, in *Erb II*, the Ohio Supreme Court upheld the use of a "domestic relations order" requiring the OPFPF to pay directly to a member's former spouse that portion of the member's monthly benefit that represented the former spouse's property pursuant to a division of marital assets. *Erb II*, 91 Ohio St.3d, 503, 747 N.E.2d 230, at syllabus. The court held that the order did not violate the terms of the administration of the pension fund. Id.

{¶ 17} In this case, the trial court relied on *Erb II* in support of its issuance of a QDRO. However, the trial court's reliance on that case was misplaced. In *Erb II*, the trial court issued a domestic relations order to the OPFPF, requiring it to pay the former wife of a fund member $1,000 per month out of each of the

member's future monthly payments. The court of appeals reversed the trial court's order, ruling that enforcement of the order would result in violation of the fund's anti-alienation provision contained in former R.C. 742.47.

{¶ 18} The Ohio Supreme Court reversed the court of appeals, finding that it misinterpreted the anti-alienation provision for the OPFPF contained in former R.C. 742.47, which provided as follows:

{¶ 19} "Except as provided in sections 742.461 [order to enforce restitution to employer for theft], 3111.23 [order for child support], and 3113.21 [orders for child and spousal support] of the Revised Code, sums of money due or to become due to *any person* from the Ohio police and fire pension fund are not liable to attachment, garnishment, levy, or seizure under any legal or equitable process, whether such sums remain with the treasurer of the fund or any officer or agent of the board of trustees of the fund, or is in the course of transmission to the *person* entitled thereto, but shall inure wholly to the benefit of *such person.*" (Emphasis added.) *Erb II,* 91 Ohio St.3d at 506, 747 N.E.2d 230.

{¶ 20} The Ohio Supreme Court found that the court of appeals erred in construing the word "person" in former R.C. 742.47 to mean "member of the fund." Id. The court held that the express language of former R.C. 742.47 does not make pension benefits available only to members of the fund, but instead, expressly authorized the payment of sums of money due or to become due from the pension fund to *any person,* irrespective of whether he or she is a member of the fund. (Emphasis added.) Id.

{¶ 21} However, the anti-alienation provision in former R.C. 742.47 is worded in a substantially different manner than the anti-alienation provision in former R.C. 145.56, which governs this case. Former R.C. 145.56 states:

{¶ 22} "The right of a person to a pension, an annuity, or a retirement allowance itself, any optional benefit, any other right accrued or accruing to any person, *under this chapter,* * * * shall not be subject to execution, garnishment, attachment, the operation of bankruptcy or the insolvency laws, or other process of law, and shall be unassignable except as specifically provided in this chapter and Chapters 3119., 3121., 3123., and 3125. of the Revised Code." (Emphasis added.)

{¶ 23} Unlike former R.C. 742.47, former R.C. 145.56 does not characterize benefits due under the fund as "sums of money due or to become due to any person * * *." This language in R.C. 742.47 allowed the *Erb II* court to plausibly construe that section as not requiring a "person" to be a "member of the fund" in order to receive benefits from it. However, the language used in former R.C. 145.56 does not permit a similar construction, because it refers to the various rights persons have *under R.C. Chapter 145,* including a person's right to a

pension, and requires that those rights not be subject to alienation through execution, garnishment, attachment, etc. It follows, then, that the parties' right to receive their PERS accounts and John's right to receive his deferred compensation account cannot be subjected to a QDRO because it would violate the anti-alienation provision in former R.C. 145.56 (which applies to this case).

{¶ 24} We conclude that enforcement of the QDRO issued to PERS in this case would violate former R.C. 145.56. Therefore, the trial court erred in issuing a QDRO in this case to divide the parties' PERS accounts and John's deferred compensation account. See *Erb I*, 75 Ohio St.3d at 20, 661 N.E.2d 175 (a trial court must not violate the terms of a pension plan in fashioning the division of benefits).

{¶ 25} Sub.H.B. No. 535 amends R.C. 145.56 and 742.47 to exempt orders issued under R.C. 3105.171 from the anti-alienation provisions in those two sections. Sub.H.B. No. 535 took effect on January 1, 2002. However, R.C. 3105.89(B) allows a trial court to modify an order issued under R.C. 3105.171 that was effective prior to January 1, 2002 "for the purpose of enforcing the order or carrying into effect the manifest intentions of the parties." R.C. 3105.89 requires the modified order to meet the requirements set forth in R.C. 3105.82.

{¶ 26} The trial court refused to issue a QDRO in this case pursuant to the relevant provisions of Sub.H.B. No. 535, which have been codified at R.C. 3105.80 et seq., because it found that "[t]he provisions of House Bill 535 are not equivalent to the protections offered by a Qualified Domestic Relations Order." In fact, the provisions of Sub.H.B. No. 535 do not offer the protections to the nonmember spouse that the QDRO issued by the trial court would have offered. For example, Sub.H.B. No. 535 does not provide for survivorship benefits to the former spouse. See Sowald & Morganstern, Domestic Relations Law (2002 Ed.) 463, Section 29:55. As one commentator has suggested, "[w]ithout pre-retirement survivorship protection, as is available under ERISA plans, nonmember former spouses are still bearing the risk of death, especially in the case of remarriage such as [in] *Cosby v. Cosby* [ (2002) ], 96 Ohio St.3d 228 [773 N.E.2d 516]. The best practice will continue to be requiring life insurance on the member spouse until actual retirement." Sowald & Morganstern at 463, Section 29:55.

{¶ 27} However, the issue of whether state retirement plans should have stronger protections for nonmember former spouses is one that must be left for resolution by our General Assembly. See Section 15, Article II, Ohio Constitution (how bills shall be passed). The issue cannot be resolved through judicial fiat by either this court or the trial court.

{¶ 28} Accordingly, the trial court's judgment overruling PERS's Civ.R. 60(B) motion for relief is reversed, and this cause is remanded to the trial court for

further proceedings. On remand, the trial court is ordered to set aside the QDRO it issued in this case, and issue a property division order pursuant to the provisions in R.C. 3105.80 to 3105.90.

Judgment accordingly.

WALSH, P.J., and VALEN, J., concur.