[Cite as *State v. C.D.D.*, 2019-Ohio-4754.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio, | : | |
| Plaintiff-Appellant, | : | |
| | | No. 19AP-130 |
| v. | : | (C.P.C. Nos. 96CR-6559 & 98CR-1266) |
| [C.D.D], | : | (REGULAR CALENDAR) |
| Defendant-Appellee. | : | |

D E C I S I O N

Rendered on November 19, 2019

**On brief:** *Ron O'Brien,* Prosecuting Attorney, and *Barbara A. Farnbacher,* for appellant. **Argued:** *Barbara A. Farnbacher.*

**On brief:** *Yeura R. Venters,* Public Defender, and *Robert D. Essex,* for appellee. **Argued:** *Robert D. Essex.*

APPEAL from the Franklin County Court of Common Pleas

NELSON, J.

{¶ 1} The parties agree that over the years, appellee C.D.D. has been convicted of various crimes including possession of cocaine as a fourth-degree felony (1997), possession of cocaine as a fifth-degree felony (1998), and domestic violence as a fourth-degree misdemeanor pursuant to Ohio Revised Code 2919.25 (2000).

{¶ 2} Purporting to act "[i]n accordance with Section 2953.32 [of the] Ohio Revised Code," the trial court now has granted C.D.D.'s expungement application and ordered the sealing of the records of his felony drug convictions. March 1, 2019 Entry Sealing Record of Conviction Pursuant to R.C. 2953.32. The state appeals, urging that because C.D.D. "failed to meet the definition of 'eligible offender,' " the trial court was without authority to act as it did. Appellant's Brief at 3 (capitalizations adjusted). Because the relevant statutes

clearly preclude expungement under these circumstances, we will sustain the assignment of error and reverse the judgment of the common pleas court.

{¶ 3} The statutory scheme for the sealing of criminal records is reasonably straightforward as applied to the facts of this matter. Only an "eligible offender" is eligible to apply to have his or her record of conviction sealed. R.C. 2953.32(A)(1). Logically enough, then, the court to which the application is made "shall" first "[d]etermine whether the applicant is an eligible offender * * *." R.C. 2953.32(C)(1)(a).

{¶ 4} An "eligible offender" is someone who either (a) "has been convicted of one or more offenses, but not more than five felonies" if none of the offenses is of a degree higher than a fourth-degree felony and "none of those offenses [is] an offense of violence" or a felony sex offense, or (b) (to the extent relevant here) "has not more than one felony conviction." R.C. 2953.31(A)(1)(a) and (b).

{¶ 5} Because C.D.D. has been convicted of two felonies, he cannot qualify as an eligible offender under R.C. 2953.31(A)(1)(b). And he cannot qualify under R.C. 2953.31(A)(1)(a) if he has been convicted of "an offense of violence."

{¶ 6} The question therefore becomes whether his conviction of domestic violence as a fourth-degree misdemeanor pursuant to R.C. 2919.25 constitutes "an offense of violence." Not surprisingly, perhaps, it does. Ohio's legislature has specified that "[a]s used in the Revised Code" the phrase " '[o]ffense of violence' means * * * [a] violation of [various specified code sections including section] 2919.25 * * *." R.C. 2901.01(A) and (A)(9)(a).

{¶ 7} Under the plain terms of the governing statutes, therefore, C.D.D. is not eligible to have the criminal records at issue sealed. That determines this case.

{¶ 8} C.D.D. through counsel appropriately "concedes that the trial court incorrectly applied the plain language of R.C. 2953.31(A)(1)(a) in finding the phrase 'none of those offenses are an offense of violence' only applied to prior convictions for felonies." Appellee's Brief at 2-3. But he then directs us to R.C. 2953.36(A)(3), arguing that the provision there in effect amends the definition of "offense of violence" as set forth in R.C. 2901.01(A)(9)(a) (listing the domestic violence section under which C.D.D. was convicted as being among those violations constituting an "offense of violence"). "R.C. 2953.36(A)(3)," he says, "indicates a clear intent by the legislature to not include fourth

degree misdemeanors as 'offenses of violence' for purposes of R.C. 2953.31 through R.C. 2953.35."  Appellee's Brief at 5.

{¶ 9}  But R.C. 2953.36(A)(3) says nothing of the sort.  And although it uses the phrase "offense of violence," it does not redefine the term and presumably means it in the way that the legislature already has defined it.  R.C. 2953.36(A)(3) says that except as otherwise provided, expungement sections R.C. 2953.31 to 2953.35 do not apply to "[c]onvictions of an offense of violence when the offense is a misdemeanor of the first degree or a felony" (with certain exceptions to that rule that are not directly relevant here). That is, the statutory subsection provides further constraints on expungements, reciting that there are certain offenses of violence (felonies and various first-degree misdemeanors) that would preclude expungement regardless of any other code provisions.  That C.D.D. has not been convicted of an offense that would disqualify him for expungement automatically even without reference to his other convictions does not mean that other statutory provisions making his other convictions relevant to expungement eligibility are somehow themselves wiped away.  And R.C. 2953.36 is not relevant to C.D.D.'s situation because no one argues that he has been convicted of a crime that would make analysis under expungement "sections 2953.31 to 2953.35" inapplicable.  Those sections *do* address C.D.D.'s circumstances and, as we have observed, they mean that he is not an "eligible offender."

{¶ 10}  *State v. Roark*, 12th Dist. No. CA 2018-02-019, 2018-Ohio-3549, as invoked by C.D.D., Appellee's Brief at 4-5, helps him not at all.  Indeed, it confirms our plain text reading that rather than redefining offenses of violence, "R.C. 2953.36 provides a list of offenses that preclude an individual from seeking expungement."  2018-Ohio-3549 at ¶ 10; *see also id.* at ¶ 13, 15 ("the Revised Code explicitly defines attempted assault as an 'offense of violence' and there is no need to go beyond the statute to aid in that determination. * * * * Roark's attempted assault conviction was a felony offense of violence under R.C. 2901.01(A)(9)(a) and (d) and Roark was therefore ineligible to have his record of conviction sealed pursuant to R.C. 2953.36(A)(3)").

{¶ 11} C.D.D.  misreads  *Roark*  because  the  automatic  exclusion  of  R.C. 2953.36(A)(3) by its terms does not apply to an assault under "2903.13 * * * that is a misdemeanor of the first degree," and so the Twelfth District Court of Appeals listed "first-

degree misdemeanor assault," along with "inducing panic" and certain other designated misdemeanor offenses, as not triggering automatic ineligibility under 2953.36(A)(3). *See id.* at ¶ 10. Again, however, this is not an R.C. 2953.36 automatic exclusion case at all and the state has not argued otherwise. That a particular first-degree misdemeanor offense as listed by the statute assessed in *Roark* does not automatically preclude expungement under R.C. 2953.36(A)(3) does not obviate further analysis of an offender's record pursuant to R.C. 2953.31(A)(1)(a) (as to whether the offender has been convicted of an "offense of violence") and (A)(1)(b) (as to whether such an offender also has been convicted of "more than one felony").

{¶ 12} C.D.D. is correct, of course, when he says that in construing a statute, "[i]t is the duty of the court 'to give effect to the words used * * * and not to delete words or to insert words not used.' " Appellee's Brief at 7, quoting *Erb v. Erb*, 91 Ohio St.3d 503, 507 (2001); *see also, e.g., Cleveland Elec. Illuminating Co. v. Cleveland*, 37 Ohio St.3d 50, 53 (1988). As judges, and not legislators, we are not at liberty to rewrite the statutory definition of "offense of violence," or to refashion the constraints of R.C. 2953.31(A)(1)(b) to say—by deleting the word "not"—that even someone with a conviction for an offense of violence may be eligible for expungement if he or she "has ~~not~~ more than one felony conviction * * * ."

{¶ 13} C.D.D. also is right that statutes addressing the same subject matter are to be read together, as a unified whole. Appellee's Brief at 7-8. That is why we apply the definition of "offense of violence" "[a]s used in the Revised Code," R.C. 2901.01(A) and (A)(9), to inform the meaning of that phrase in R.C. 2953.31's definition of an "eligible offender," why we then apply that definition of "eligible offender" in reviewing the sealing procedures specified in R.C. 2953.32, and (one of the reasons) why we understand that the further (and automatic) constraints on sealing provided in R.C. 2953.36 do not obviate the other, somewhat more detailed constraints expressed in R.C. 2953.31(A)(1)(a) and (b).

{¶ 14} But C.D.D. is wrong to imply that because the statutory scheme does not "make sense" or is somehow "absurd," we and the trial court should be free to disregard the governing legislative text. Appellee's Brief at 5-6. First, C.D.D. fails to explain the predicate for this argument: he does not articulate exactly why it does not "make sense" or is "absurd" for the legislature to have concluded that expungement may be appropriate, after a

balancing of interests, for an offender whose record reflects an offense of violence and "not more than one felony conviction," R.C. 2953.31(A)(1)(b), but not for an offender whose record reflects an offense of violence and more than one felony conviction. That distinction seems to us precisely the sort of policy judgment that the legislature is charged with making and that it makes regularly. Moreover, we note that even if the offense of violence occurs first, and is then expunged if and as appropriate under the statute, the record does not evaporate: "upon conviction of a subsequent offense, the sealed record of prior conviction * * * may be considered by the court in determining" expungement applications. R.C. 2953.32(C)(2).

{¶ 15} The "hardly make[s] sense" contention here also illuminates the difficulties that would be inherent in according judges leeway to rewrite statutory language so as to advantage their own policy preferences. Although we acknowledge the (legislatively expressed) presumption that statutes are intended to achieve just and reasonable results, R.C. 1.47, we also understand that one person's absurdity may be another person's ardently advocated campaign platform. Making someone ineligible for expungement because he has two felonies rather than one may rest on a fine distinction, but it is a distinction for the legislature to establish or amend, not judges who are supposed to be applying the law as written: it is the sort of distinction that can arise from societal developments, data-driven or other policy study, public sentiments, or other considerations well beyond ken of a judicial panel.

{¶ 16} The rules of construction do not empower us to ignore or amend the words that the constitutionally ordained legislative process has produced. " 'If the meaning of the statute is unambiguous and definite, it must be applied as written and no further interpretation is necessary.' " *State v. Vanzandt*, 142 Ohio St.3d 223, 225, 2015-Ohio-236, ¶ 7, quoting *State ex rel. Savarese v. Buckeye Local School Dist. Bd. of Edn.,* 74 Ohio St.3d 543, 545 (1996). If the outcome of a case under our reading of a statute strikes us as absurd, that sense naturally should be a very strong signal (because statutes are intended to achieve reasonable results) that we need to triple-check our understandings to make sure that we are reading the legislative language correctly and fully in context. That necessary judicial humility, however, cannot morph ironically into a blank check empowering courts to redesign or nullify statutory language in violation of the separation of powers.

{¶ 17} As Judge Easterbrook has written, the anti-absurdity canon "does not license courts to improve statutes * * * substantively, so that their outcomes accord more closely with judicial beliefs about how matters ought to be resolved. * * * * [The doctrine] is linguistic rather than substantive. It deals with texts that don't scan as written and thus need repair work, rather than with statutes that seem poor fits for the task at hand. In other words, the modern decisions draw a line between poor exposition and benighted substantive choice: the latter is left alone, because what judges deem a 'correction' or 'fix' is from another perspective a deliberate interference with the legislative power to choose what makes for a good rule." *Jaskolski v. Daniels*, 427 F.3d 456, 461-62 (7th Cir.2005).

{¶ 18} Enough people in the legislature apparently have concluded that the statutory provisions at issue here make sense (or should be the law in any event). C.D.D. doesn't agree. Under our tripartite system of government, we are obliged to go with the policy as adopted through the legislative process consistent with our constitutions.

{¶ 19} As we have explained, C.D.D. is not an eligible offender. "If an applicant is not an eligible offender, the trial court lacks jurisdiction to grant the application." *State v. Dominy*, 10th Dist. No. 13AP-124, 2013-Ohio-3744, ¶ 6. We sustain the state's assignment of error, reverse the judgment of the Franklin County Court of Common Pleas that ordered the sealing of parts of C.D.D.'s record, and remand this matter to that court to reject the expungement application.

*Judgment reversed; cause remanded.*

SADLER and LUPER SCHUSTER, JJ., concur.

_____