OPINION
{¶ 1} Appellant, Charles T. Greenslade, appeals the judgment entered by the Domestic Relations Division of the Lake County Court of Common Pleas. The trial court ordered appellant to pay one-half of his retirement benefits to appellee, Carol J. Greenslade.
 {¶ 2} The parties were married in 1975. Two children were born during the marriage. However, both children were adults at the time of the dissolution of the marriage.
 {¶ 3} In 2001, the parties decided to terminate their marriage by filing a petition for dissolution and a separation agreement with the trial court. The trial court accepted the separation agreement and incorporated it into a decree of dissolution, thereby terminating the marriage.
 {¶ 4} The separation agreement provided that the parties would split the cost of their children's college educations. The separation agreement also provided that appellant pay appellee one-half of his State Teachers Retirement System ("STRS") retirement benefits. Pursuant to the agreement, neither party would receive spousal support.
 {¶ 5} At the time of the parties' separation, appellant was receiving disability benefits from STRS. He had been receiving disability benefits since 1993. For the first few months after the decree of dissolution, appellant paid appellee one-half of the amount he received from his monthly disability benefit check. Then, for several months, appellant paid appellee an amount that was either $187.50 or $375 short of the full $1,318.05 due appellee, equaling one-half of appellant's benefit amount. In June 2002, appellant ceased paying appellee any portion of his disability check. He did this because he believed appellee owed money for the children's education expenses.
 {¶ 6} On June 5, 2002, appellee filed a motion to show cause as to why appellant should not be held in contempt of court for failing to pay her one-half of the STRS benefits. On June 26, 2002 appellant filed a motion to show cause as to why appellee should not be held in contempt of court for failing to pay for her portion of the children's college education expenses.
 {¶ 7} While the motions to show cause were pending, appellant's disability benefits terminated as of August 31, 2002. Appellant appealed the decision terminating his disability benefits. Appellee's attorney at that time represented appellant in the appeal. Also, appellee traveled to Columbus to testify at the hearing regarding appellant's disability.
 {¶ 8} The magistrate issued a decision recommending appellant be found in contempt for failing to pay appellee one-half of his STRS disability benefits and recommending appellee be found in contempt for failing to pay for her portion of the children's education expenses. The trial court adopted the magistrate's decision.
 {¶ 9} For nearly one year, appellant was not receiving any benefits from STRS. However, in July 2003, appellant applied for retirement benefits through STRS. His application was granted, retroactive to September 1, 2002. Appellant began receiving monthly retirement payments from STRS and was given a lump-sum payment for the retroactive time period. Appellant did not pay appellee any portion of these payments.
 {¶ 10} In April 2004, appellee filed a motion to show cause as to why appellant should not be held in contempt of court for failing to pay her one-half of the STRS retirement benefits. A hearing was held on this motion before the magistrate. Appellant claimed that he was not required to pay appellee one-half of his STRS retirement benefits and was only required to pay her one-half of his STRS disability benefits. The magistrate disagreed and issued a decision recommending appellant be found in contempt for failing to pay appellee one-half of his STRS retirement benefits. Pursuant to Civ.R. 53, appellant filed objections to the magistrate's decision. The trial court found appellant in contempt and ordered that appellant pay appellee one-half of his STRS retirement benefits from September 2002 forward.
 {¶ 11} Appellant has timely appealed the trial court's judgment entry finding him in contempt. Appellee filed a motion to dismiss this appeal due to the lack of a final, appealable order. Appellee argued that since appellant was given an opportunity to purge his contempt, the trial court's May 24, 2005 judgment entry is not a final, appealable order.[1] In September 2005, this court overruled appellee's motion to dismiss. This court held that while appellant is precluded from addressing the finding of contempt on appeal, the trial court's judgment entry "also made a decision regarding the division of Appellant's STRS benefits." Appellant raises three assignments of error. All of these assigned errors concern the trial court's decision regarding his STRS benefits. Therefore, we will address the merits of this appeal.
 {¶ 12} Appellant's first assignment of error is:
 {¶ 13} "The lower court fails to distinguish the difference between `disability' and `retirement' as those accounts are defined, categorized and funded within the State Teachers Retirement System."
 {¶ 14} Appellant raises several arguments regarding the trial court's interpretation of the separation agreement. He asserts the parties intended to split only his STRS disability benefits, not his STRS retirement benefits. The following language of the separation agreement is pertinent to this analysis:
 {¶ 15} "The parties shall equally divide Husband's interest in his STRS retirement benefits by Husband paying to the Wife each and every month one half of his monthly retirement check which he receives from STRS. These monthly payments shall begin the month after the real property, described in Section III, is sold. This payment is to represent a division of property."
 {¶ 16} Initially, appellant argues that the parties could not have intended the language of the separation agreement to include STRS retirement benefits, because, at the time the agreement was entered into, STRS retirement benefits were not subject to division. We disagree.
 {¶ 17} State-sponsored retirement plans can become marital property in which a non-employed spouse can be given a property interest.[2] At the time the parties entered into the separation agreement, STRS benefits were not subject to division pursuant to a Qualified Domestic Relations Order ("QDRO").[3]
 {¶ 18} In Erb v. Erb II, the Supreme Court of Ohio held "[a] domestic relations order requiring the Ohio Police Fire Pension Fund ["OPFPF"] to pay directly to a member's former spouse that portion of the member's monthly benefit that represents the former spouse's property pursuant to a division of marital assets does not violate the terms of the administration of the fund."[4]
 {¶ 19} The Twelfth Appellate District addressed the Erb v. Erb II
holding in the context of a Public Employee Retirement System ("PERS") account.[5] In distinguishing the Erb v. Erb II decision, the Twelfth District noted that the Supreme Court of Ohio relied on the language of former R.C. 742.47, which governed the OPFPF and authorized payment to any entitled person.[6] The Twelfth District held that "[u]nlike former R.C. 742.47, former R.C. 145.56 [which pertained to PERS accounts] does not characterize benefits due under the fund as `sums of money due or to become due to any person * * *.'"[7] Rather, the court held that R.C. 145.56 specifically provides that the rights under that section are not subject to "alienation through execution, garnishment, attachment, etc."[8] Thus, the Twelfth District held that a QDRO may not be issued on a PERS account.[9]
 {¶ 20} Appellant argues that this court should apply the Patterson v.Patterson holding to STRS accounts. He argues that the language of former R.C. 145.56 is the same as the language of former R.C. 3307.71, which governed STRS accounts (R.C. 3307.71 had been renumbered, at the time the trial court accepted the separation agreement, the statute was numbered R.C. 3307.41). While the language of the two former statutes is substantially similar, we need not extend the Patterson holding to STRS accounts in order to resolve this matter. This is because the trial court did not issue a QDRO in this case.
 {¶ 21} This court has previously held that "while [STRS] funds are not subject to distribution, they are marital assets which are to be considered by the trial court in determining an equitable division of the parties' property."[10] Thus, at the time the parties entered into their separation agreement, where appellant agreed to give appellee one-half of his monthly retirement benefits, the trial court was not prohibited from ordering a similar property distribution.
 {¶ 22} The facts of this matter are similar to those in the case ofJohnson v. Johnson.[11] In Johnson v. Johnson, the parties entered into a separation agreement, which was incorporated into the decree of dissolution. In the agreement, the husband agreed to pay his former wife one-half "'of the total proceeds due him'" under his STRS pension.[12]
The Second Appellate District held that while the trial court was prohibiting from directly attaching the husband's retirement account, it was permitted to use its contempt powers to compel the husband to comply with the separation agreement.[13]
 {¶ 23} In this matter, the trial court did not issue a QDRO. The trial court merely held appellant in contempt for failing to pay appellee one-half of his monthly retirement benefits, as he agreed to do in the separation agreement. While the former statute may have prohibited the attachment of appellant's STRS account, it did not prohibit the proceeds of that account from being divided between the parties, as the benefits are a marital asset.[14]
 {¶ 24} Next we will address appellant's argument that the parties intended the contract provision to only apply to his STRS disability benefits.
 {¶ 25} The Supreme Court of Ohio has held that "'a settlement agreement is a contract designed to terminate a claim by preventing or ending litigation' and that the construction of a written contract is a question of law, which we review de novo."[15]
 {¶ 26} The language of the separation agreement clearly states that appellant is to pay appellee one-half of his interest in his "STRSretirement benefits." (Emphasis added.) We note that "'[c]ommon words appearing in a written instrument will be given their ordinary meaning unless manifest absurdity results, or unless some other meaning is clearly evidenced from the face or overall contents of the instrument.'"[16] Giving the term "retirement benefits" its ordinary meaning, we believe the parties intended this term to mean retirement benefits.
 {¶ 27} Appellant argues the parties intended the term "retirement benefits" to mean disability benefits, because the language referred to the payments he was receiving when the separation agreement was entered into. He argues that he was receiving disability benefits at that time and was not eligible to receive retirement benefits. Very possibly, the parties intended that appellant give appellee one-half of whatever check he received as STRS benefits. However, at this time, the question is whether "STRS retirement benefits" included STRS retirement benefits. Whether that term also included STRS disability benefits is not before this court at the present time.
 {¶ 28} On appeal, appellant notes that STRS disability benefits and STRS retirement benefits are separate and distinct terms as defined by the revised code. We note that appellant was a member-contributor to the STRS system for several decades. At the time the agreement was entered into, he had been receiving disability benefits for over seven years. Presumably, therefore, he was well aware of the distinction between disability benefits and retirement benefits when he signed the separation agreement.
 {¶ 29} Since the separation agreement specifically states that appellant is to pay appellee one-half of his STRS retirement benefits, we conclude the parties intended that term to apply to his STRS retirement benefits. The trial court did not err in reaching the same conclusion.
 {¶ 30} Appellant's first assignment of error is without merit.
 {¶ 31} Appellant's second assignment of error is:
 {¶ 32} "The lower court skirted the issue that the doctrine of res judicata applied and was relied upon by appellant, now to his severe detriment, in the lower court's finding of fact that `payments were made as a result of a disability benefit.'"
 {¶ 33} The Supreme Court of Ohio has held that "[a] valid, final judgment rendered upon the merits bars all subsequent actions based upon any claim arising out of the transaction or occurrence that was the subject matter of the previous action."[17]
 {¶ 34} During the first set of contempt hearings, the magistrate's decision contained the following language.
 {¶ 35} "It is also uncontroverted that the STRS payments to the husband stopped, effective August 31, 2002. The payments were made as a result of a disability benefit and not straight retirement. The Agency determined that husband was no longer disabled."
 {¶ 36} The trial court adopted the magistrate's decision. Thus, we will address this finding as also having been made by the trial court.
 {¶ 37} The trial court's first judgment entry did not address the issue of the parties' intention regarding the term "STRS retirement benefits" on its merits. During the first set of contempt hearings, appellant's position was not that he should not have to pay appellee half of the money because he was receiving disability, instead of a retirement, benefits. Rather, his position was that he should not have to pay appellee half of his disability benefits, because he believed appellee had not met her obligation to pay her share of the children's college education.
 {¶ 38} The trial court merely noted the benefits at issue were disability benefits. The trial court did not make a legal determination that the disability benefits were the "STRS retirements benefits" mentioned in the agreement.
 {¶ 39} Finally, even if the trial court's original order intended to make a legal conclusion, it merely held that the disability benefits fell under the larger, generic "umbrella" of retirement benefits. Such an interpretation would not preclude retirement benefits from also falling under that same umbrella.
 {¶ 40} Res judicata did not apply to this matter.
 {¶ 41} Appellant's second assignment of error is without merit.
 {¶ 42} Appellant's third assignment of error is:
 {¶ 43} "The lower court decision has greatly modified the parties['] contract, in that the decision has modified spousal support wherein no subject matter jurisdiction was reserved."
 {¶ 44} The trial court's decision did not modify spousal support. The separation agreement specifically provided that neither party was to pay spousal support. The trial court merely interpreted a provision of the separation agreement concerning appellant's STRS retirement benefits. The language of the separation agreement clearly states that the division of appellant's interest in his STRS retirement benefits is a property division. The agreement provides that appellant's "payment [is] to represent a division of property."
 {¶ 45} Appellant's third assignment of error is without merit.
 {¶ 46} The judgment of the trial court is affirmed.
DIANE V. GRENDELL, J.,
COLLEEN MARY O'TOOLE, J.,
concur.
[1] See, e.g., Chain Bike v. Spoke `N Wheel, Inc.(1979),64 Ohio App.2d 62, 64.
[2] Erb v. Erb (2001), 91 Ohio St.3d 503, 506, citing Erb v. Erb
(1996), 75 Ohio St.3d 18, 20-22.
[3] Guidubaldi v. Guidubaldi (1990), 64 Ohio App.3d 361, 364. See, also, former R.C. 3307.41 (2000).
[4] Erb v. Erb, 91 Ohio St.3d 503, syllabus.
[5] Patterson v. Patterson, 151 Ohio App.3d 574, 2003-Ohio-709.
[6] Patterson v. Patterson, at ¶ 20, citing Erb v. Erb,91 Ohio St.3d at 506.
[7] Patterson v. Patterson, at ¶ 23. 
[8] Id.
[9] Id.
[10] Guidubaldi v. Guidubaldi, 64 Ohio App.3d at 364.
[11] Johnson v. Johnson (1993), 85 Ohio App.3d 161.
[12] Id. at 162.
[13] Johnson v. Johnson, 85 Ohio App.3d at 163-164.
[14] See, e.g., Guidubaldi v. Guidubaldi, 64 Ohio App.3d at 364.
[15] (Citations omitted.) In re All Kelley and Ferraro Asbestos Cases,104 Ohio St.3d 605, 2004-Ohio-7104, at ¶ 28.
[16] Ladd v. Mignin, 6th Dist. No. F-04-013, 2004-Ohio-5674, at ¶ 15, quoting Alexander v. Buckeye Pipe Line Co. (1978), 53 Ohio St.2d 241, paragraph two of the syllabus.
[17] Grava v. Parkman Twp. (1995), 73 Ohio St.3d 379, syllabus.